146 P.3d 1183 (2006)
STATE of Washington, Respondent,
v.
Charles J. PRICE, Petitioner.
No. 77152-9.
Supreme Court of Washington, En Banc.
Argued March 21, 2006.
Decided November 16, 2006.
Thomas Edward Doyle, Attorney at Law, Hansville, WA, Patricia Anne Pethick, Attorney at Law, Tacoma, WA, for Petitioner.
James C. Powers, Thurston County Prosecuting Attorney Ofc, Olympia, WA, for Respondent.
BRIDGE, J.
¶ 1 Charles Price was convicted of four counts of first degree child molestation. The single count at issue here involved R.T., who was four years old when the molestation occurred and six years old at the time of trial. R.T. disclosed the sexual abuse to her mother and then to a detective, both of whom testified about R.T.'s disclosures at trial. In addition, an audiotape of the detective's interview with R.T. was admitted and played to the jury.
¶ 2 At trial, R.T. indicated that she could not remember the relevant events or her disclosures to her mother and the detective. Relying on Crawford v. Washington,[1] Price argues that R.T.'s inability to remember rendered her unavailable for purposes of the confrontation clause, and thus, admission of her prior statements was improper because Price had no prior opportunity to cross-examine R.T. about them. We conclude that the questions the prosecutor asked on direct examination and R.T.'s answers constitute sufficient testimony to satisfy the confrontation clause. Because R.T. was available and testified at trial, Crawford is not implicated. We affirm the Court of Appeals.

*1184 I

Statement of Facts and Procedural History
¶ 3 Price's wife, Clara, ran a licensed day care in their home in Thurston County. Four-year-old R.T. began attending the day care in August 2001. R.T. initially complained to her mother that she did not like "quiet time." Report of Proceedings (RP) (Dec. 10, 2002) at 22. Then, at home one evening in early October, after R.T. had put on her pajamas, she came out of her room and "started pinching at herself" at the front of her pull-up diaper. RP at 23. When her mother asked what she was doing, R.T. replied that she had "`an owie.'" Id. R.T. then pulled down her diaper and showed her mother that her vaginal area was "bright red and swollen." Id. R.T. told her mother that "Chucky had rubbed her," simultaneously making pinching motions with her fingers. Id. at 23-24. R.T.'s mother asked who Chucky was, thinking it might be another child, and R.T. replied it was "Big Chucky." Id. at 24. R.T.'s mother did not ask any more questions and sent R.T. to bed. She contacted R.T.'s pediatrician the next day.
¶ 4 Two days later, Detective Bergt interviewed R.T. at a sexual assault clinic, and a nurse at the clinic conducted a physical exam. During the interview, when asked where Chucky had touched her, R.T. pointed to her vaginal area. When asked how Chucky touched her, she lifted up her dress, reached between her legs, grabbed her vagina over her clothes and made a pinching motion from front to back. R.T. said, "`[t]hat's what he did.'" Id. at 99. The physical exam revealed no redness in the genital area.
¶ 5 Detective Bergt also interviewed Price. Price said that he often would lay down with kids during quiet time. Price asserted that R.T. was more of an adult than a child, that she was needy, and that she would often hug him and refuse to let go. Price told Detective Bergt that once when R.T. gave him a hug when he was on his knees, he lost his balance and fell on top of her. His hand accidentally landed between her legs and might have hit her vagina.
¶ 6 In response to a newspaper article about the case, an additional victim, T.J., came forward. T.J. claimed that when he was a fouror five-year-old attending Clara's day care in the early 1990s, Price repeatedly stuck his hand down T.J.'s pants during nap time, touching T.J.'s penis. The State charged Price with one count of first degree child molestation regarding R.T. and four additional counts of first degree child molestation regarding T.J.
¶ 7 Before trial, at a child hearsay hearing pursuant to RCW 9A.44.120,[2] the prosecutor put R.T. on the stand and asked several preliminary questions. R.T. told the court that she was six years old, she identified several colors, she reported that she was sitting in the "truth chair" and that it was bad to tell a lie, and she correctly identified several statements as truth or lies. RP (Nov. 25, 2002) at 8-9. The prosecutor asked if R.T. liked her old day care and she replied, "No." Id. at 9. When asked, "Did you like Chucky? Why not?" R.T. answered, "[b]ecause he rubbed me right here." Id. at 10. The court found R.T. to be competent. R.T.'s mother and Detective Bergt then testified about R.T.'s disclosures to them. The court concluded that R.T.'s hearsay statements to her mother and to Detective Bergt were sufficiently reliable to warrant admission under the child hearsay statute as long as R.T. testified at trial.
¶ 8 At trial, R.T.'s mother testified first, explaining the details of R.T.'s disclosure. Then, R.T. testified. She explained that she was six years old, and she answered some preliminary questions about school, though she remained silent in response to some *1185 questions. R.T. again said that she was sitting in "[t]he truth chair" and correctly identified several statements as truth or lies. RP (Dec. 10, 2002) at 36-37. The prosecutor established that R.T. knew the difference between on top of and underneath, inside and outside. R.T. pointed to Price when asked who "Chucky" was. Id. at 38-39. She also testified that she liked Chucky and Clara, but when asked directly about the alleged abuse, R.T. said that she forgot:
Q. . . . [R.T.], what did Chucky do with you at day care?
A. Me forgot.
Q. You forgot. Okay. Was there a quiet time at day care?
A. (Witness nodded head.)
Q. Could you tell me what quiet time is?
A. That you need to be quiet.
Q. Okay. And what did you do at quiet time?
A. I had to be quiet.
Q. Okay. Who waswho else was there at quiet time?
A. The kids.
Q. Okay. Was Chucky there at quiet time?
A. (Witness nodded head.)
Q. And where was he?
A. (Witness shrugged.)
Q. [R.T.], did you ever give Chucky hugs?
A. Yeah.
Q. Yeah. And did you ever lay on your mat with him?
A. Yeah.
Q. Okay. Besides hugs, did Chucky ever touch you anywhere?
A. (Witness nodded head.)
[Defense counsel]: Your Honor, I'm going to object to the form of the question as leading.
The Court: Overruled. It can be answered yes or no.
[Prosecutor]: Q. Can you answer out loud for me?
A. Me forgot again.
Q. You forgot again. Okay. [R.T.], do you remember talking to your mom about Chucky?
A. Yeah.
Q. Yeah. What did you tell your mom?
A. (Witness shrugged.)
Q. Okay. Do you remember talking to me?
A. Yeah.
Q. About Chucky?
A. (Witness nodded head.)
Q. And what is my name?
A. Jodi.
Q. Yeah. And what did you tell me about Chucky?
A. (Witness shrugged.)
Q. Okay. Do you remember talking to Detective Bergt?
A. Uh-huh.
Q. Yeah. What did you talk to her about? Do you remember?
A. (Witness shrugged.)
Q. No. Okay. All right.
Id. at 39-41. Defense counsel chose not to cross-examine R.T.
¶ 9 The clinic nurse testified that R.T.'s genital exam revealed no redness or rash. The nurse explained that her findings were not inconsistent with R.T.'s disclosure, since rubbing over clothing would cause irritation that would generally resolve quickly. On cross-examination, the nurse reported that her findings were also consistent with no abuse.
¶ 10 Detective Bergt testified that during their interview, R.T. showed Detective Bergt how Price had "grabbed her vagina over the top of her clothes and she pinched." Id. at 99. "She was pinching it from the front towards the back." Id. The jury also heard the tape recording of R.T.'s interview with Detective Bergt, which was admitted without objection. Detective Bergt also testified about her interview with Price. On cross-examination, defense counsel asked Detective Bergt to discuss R.T.'s testimony at the pretrial hearing. Detective Bergt reported that R.T.'s testimony had been similar to the answers she gave in her interview. On redirect, the prosecutor and Detective Bergt again discussed the pretrial hearing:

*1186 Q. And at that hearing, was [R.T.] able to identify whether or not the defendant had touched her?
A. Yes, she did.
Q. And was shebesides verbalizing it, did she do anything else at that hearing?
A. Yeah, she pointed to hershe said, "`He touched me right here,'" and she pointed to her vaginal area.
Id. at 124. Price did not testify.
¶ 11 In closing, defense counsel argued that it was significant that R.T. could not remember the alleged abuse on the stand. He emphasized that R.T. did not have any trouble describing how Price had allegedly touched her at the pretrial hearing.
Why can she remember two weeks ago, but she can't remember now? And I would submit to you, ladies and gentlemen, the reason why, she's not sure exactly what happened. This is it. This is the jury trial. This is where . . . you determine whether or not Mr. Price is guilty or not guilty, and that's incredibly important. And when you get here in front of a [jury] and you testify, you should be sure of what happened, and I submit to you, ladies and gentlemen, that she's not sure. Maybe there was an accident, maybe there was inadvertent touching. I don't know.
RP (Dec. 11, 2002) at 230-31. The prosecutor countered that R.T. had been overwhelmed on the stand and while her testimony at the pretrial hearing was consistent with her disclosures to her mother and the detective, the presence of the jury in the courtroom could have caused R.T. to be more anxious. The court's instructions to the jury explained that they could take into account, among other things, any witness's memory while testifying.
¶ 12 The jury convicted Price on the count involving R.T. and on three of the four counts involving T.J. Price was sentenced to 149 months for each count, to be served concurrently. Price appealed, arguing in part that because R.T. could not recount her allegations on the stand, she did not testify sufficiently to satisfy the confrontation clause. State v. Price, 127 Wash.App. 193, 198-99, 110 P.3d 1171 (2005). The Court of Appeals, in a split decision, affirmed. While recognizing that the plurality opinion in In re Personal Restraint of Grasso, 151 Wash.2d 1, 84 P.3d 859 (2004), was not controlling, the majority held that a witness's lapse of memory does not violate the confrontation clause, that Price had an opportunity to cross-examine R.T. about her lapse of memory regarding her prior disclosures, and that Crawford was not implicated because R.T. appeared for cross-examination at trial. Price, 127 Wash. App. at 200-01, 110 P.3d 1171. The dissent disagreed, arguing that R.T.'s responses provided no information from which she could be effectively cross-examined. Id. at 208-09, 110 P.3d 1171 (Armstrong, J., dissenting). We granted Price's petition for review only on the confrontation issue. State v. Price, noted at 156 Wash.2d 1005, 132 P.3d 147 (2006).

II

Analysis
¶ 13 We must determine whether the admission of R.T.'s pretrial statements to her mother and the detective violated the confrontation clause, given the character of her testimony at trial.[3] Whether the admission of R.T.'s hearsay statements violated Price's confrontation rights is a constitutional question subject to de novo review. See, e.g., State v. Bradshaw, 152 Wash.2d 528, 531, 98 P.3d 1190 (2004).
¶ 14 The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend VI.[4] In Crawford, 541 U.S. 36, 124 *1187 S.Ct. 1354, the United States Supreme Court held that where a witness is absent, but the State wishes to present his or her prior testimonial statements at trial, it can do so only if the witness is truly unavailable and the defendant has had a prior opportunity for cross-examination. Id. at 59, 68, 124 S.Ct. 1354. Price argues that R.T.'s inability to remember rendered her unavailable for purposes of the confrontation clause, he had no prior opportunity to cross-examine her with regard to her statements to her mother and Detective Bergt, and therefore admission of those statements violated the Crawford rule.
¶ 15 Significantly, prior statements must be excluded under the Crawford rule only if a witness is unavailable at trial for purposes of the confrontation clause.[5] In a series of pre-Crawford cases, the United States Supreme Court addressed the effect of a witness's loss of memory on a defendant's right of confrontation. In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the 16-year-old declarant reported, in both a police interview and at a preliminary hearing, that Green was his marijuana supplier. Id. at 151, 90 S.Ct. 1930. Then at trial, the declarant claimed that he could not remember how he had gotten the marijuana because he had taken LSD (lysergic acid diethylamide) on the day it was delivered. Id. at 151-52, 90 S.Ct. 1930. The prosecutor introduced the declarant's statements from the preliminary hearing and the police interview. Id. at 152, 90 S.Ct. 1930. The declarant admitted to making the prior statements, and he claimed he was telling the truth at the time, but he also asserted that he was telling the truth on the stand. Id.
¶ 16 The Court concluded that "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." Id. at 158, 90 S.Ct. 1930. The purposes of the confrontation clause are to ensure that the witness's statements are given under oath, to force the witness to submit to cross-examination, and to permit the jury to observe the witness's demeanor. Id. The Green Court held that "the Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend or otherwise explain the inconsistency between his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories." Id. at 164, 90 S.Ct. 1930 (emphasis added). The declarant's preliminary hearing testimony was deemed admissible, id. at 165, 90 S.Ct. 1930, but the Court declined to address the statement made to the police officer because the *1188 issue had not been developed at the state court. Id. at 168-69, 90 S.Ct. 1930.
¶ 17 In a concurring opinion, the reasoning of which would later be adopted by the Court, Justice John Marshall Harlan opined that where a witness is physically available, but cannot recall making the out-of-court statement, or even the underlying events described in the statement, there is no confrontation clause consequence. Id. at 188, 90 S.Ct. 1930 (Harlan, J., concurring). "The prosecution has no less fulfilled its obligation simply because a witness has a lapse of memory." Id.
¶ 18 Several years later, in Delaware v. Fensterer, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985), the Court found no confrontation clause violation where a scientific expert could not recall which of three scientific methods he had employed in forming his expert opinion. Id. at 16-17, 106 S.Ct. 292. While Fensterer did not involve a prior statement, the Court recognized that a lapse of memory invites the jury to discredit a witness, the fact finder can observe the witness's demeanor under cross-examination, and the witness is bound by the oath in the presence of the accused. Id. at 19-20, 106 S.Ct. 292.
The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.
Id. at 21-22, 106 S.Ct. 292.
¶ 19 Then, in 1988, the Supreme Court directly addressed whether the confrontation clause barred admission of a prior statement where the declarant was unable, because of memory loss, to explain the basis for the earlier statement. United States v. Owens, 484 U.S. 554, 555-56, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). In that case, the victim, a prison guard, was attacked and beaten with a metal pipe. Id. at 556, 108 S.Ct. 838. His skull was fractured and his memory was severely impaired. Id. At one point during his recovery, the victim was able to describe the attack to an investigator and identify his attacker. Id. But because of his brain injury, at trial he could remember identifying his assailant, but he could not remember seeing the assailant during the attack. Id.
¶ 20 After reviewing the Green and Fensterer cases, the Owens Court reiterated that "`[t]he Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."'" Id. at 559, 108 S.Ct. 838 (quoting Kentucky v. Stincer, 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (quoting Fensterer, 474 U.S. at 20, 106 S.Ct. 292)). The opportunity to cross-examine "is not denied when a witness testifies as to his current belief but is unable to recollect the reason for that belief." Id. In that case, the defendant still has the opportunity to bring out bias, lack of attentiveness, "and even (what is often a prime objective of cross-examination, . . .) the very fact that [the witness] has a bad memory." Id.
The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee. They are, however, realistic weapons, as is demonstrated by defense counsel's summation in this very case, which emphasized [the victim's] memory loss and argued that his identification of respondent was the result of the suggestions of people who visited him in the hospital.
Id. at 560, 108 S.Ct. 838. The Owens Court then explicitly adopted the analysis suggested by Justice Harlan in Green, id. at 559, 108 S.Ct. 838, concluding that when the "declarant is present at trial and subject to unrestricted cross-examination," there was no need to evaluate the reliability of the prior out-of-court statement. Id. at 560, 108 S.Ct. 838.
¶ 21 Since Owens, this court has decided two cases in which child victim testimony has called the defendant's confrontation rights *1189 into question. In State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697 (1997), we evaluated statutory and confrontation clause challenges where the child took the stand at trial but was not asked and did not answer any questions relating to the events alleged in the child's prior statements. Id. at 474, 939 P.2d 697. In its confrontation clause analysis, the Rohrich court noted the clause's preference for live testimony and emphasized the central role of cross-examination in ascertaining truth. Id. at 477-78, 939 P.2d 697. The court reasoned
The opportunity to cross-examine means more than affording the defendant the opportunity to hail the witness to court for examination. It requires the State to elicit the damaging testimony from the witness so the defendant may cross-examine if he so chooses. In this context, "not only [must] the declarant have been generally subject to cross-examination; he must also be subject to cross-examination concerning the out-of-court declaration." The State's failure to adequately draw out testimony from the child witness before admitting the child's hearsay puts the defendant in "a constitutionally [unacceptable] Catch-22" of calling the child for direct or waiving his confrontation rights.
Id. at 478, 939 P.2d 697 (footnotes and citations omitted) (quoting United States v. West, 670 F.2d 675, 687 (7th Cir.1982) and Lowery v. Collins, 996 F.2d 770, 771-72 (5th Cir.1993)). Thus, the court held that the confrontation clause required the child to give "live, in-court testimony describing the acts of sexual contact to be offered as hearsay." Id. at 482, 939 P.2d 697.
¶ 22 Two years later, we evaluated whether a child victim had testified adequately to support admission of her prior out-of-court statements when she took the stand, but recanted her prior allegations that the defendant had molested her. State v. Clark, 139 Wash.2d 152, 153, 985 P.2d 377 (1999). The question in Clark was limited to the constitutional confrontation clause issue. Id. at 156, 985 P.2d 377. The Clark court first reviewed Green and Owens (an exercise not undertaken by the Rohrich court) and consolidated the following rule:
[T]he admission of hearsay statements will not violate the confrontation clause if the hearsay declarant is a witness at trial, is asked about the event and the hearsay statement, and the defendant is provided an opportunity for full cross-examination.
Id. at 159, 985 P.2d 377 (emphasis added). The court also concluded that the child was not "`effectively unavailable'" for confrontation clause purposes because the child was
not only sworn in as a witness at trial, asked about the alleged incidents, and provided answers to the questions put to her, but she was actually cross-examined. She was not only available but was probably the best witness for the defense.
Id. at 159, 985 P.2d 377. The court acknowledged the Rohrich language that seemed to require an on-the-stand description, but then distinguished Rohrich on the facts. Id. at 160-61, 985 P.2d 377. In Rohrich, the confrontation clause's preference for live testimony had been "thwarted" because the prosecutor entirely neglected to ask "about the alleged occurrence or the hearsay statement." Id. at 161, 985 P.2d 377. Yet in Clark, there was no such evasion, and "the preference for live testimony prevailed through direct examination on both points." Id. In Clark,
[t]he state asked [the child] about the alleged acts and she answered by denying they occurred. The state also asked [the child] about her prior hearsay statements which she acknowledged making but claimed were lies. Far from being placed in a constitutionally impermissible Catch-22 of calling the child for direct or waiving his confrontation rights, Clark had a full opportunity to cross-examine [the child] about the alleged acts and about her hearsay statements. The state did not seek to shield [the child] from difficult questions nor was she evasive in her answers.
Id. at 161, 985 P.2d 377. Under the circumstances of that case, we held that the confrontation clause requirements were fulfilled. Id.
¶ 23 In 2004, this court again evaluated whether a five-year-old victim of child molestation had testified sufficiently on the stand to support admission of her prior statements. *1190 In re Pers. Restraint of Grasso, 151 Wash.2d 1, 84 P.3d 859. The child took the stand at trial, but the prosecutor gave her permission to answer questions on direct with "`I don't want to talk about it.'" Id. at 6, 84 P.3d 859. The child gave that answer in response to some questions, but she also answered "`I can't remember,'" when asked "whether anyone had ever touched her privates in a way she did not like." Id. at 9, 84 P.3d 859. When asked whether she was telling the truth when she told her doctor about the abuse, she answered, "`Yeah.'" Id. And when asked about her encounters with a child interview specialist and her therapist (in which allegations were made), the child answered that she could not remember. Id. On cross-examination, the child admitted that she had previously recanted, once in an interview with defense counsel and once in court, and she said those recantations were truthful, but when asked directly if her father had molested her, the child answered again that she could not remember. Id.
¶ 24 In a split opinion, this court denied the personal restraint petition. Two justices determined that the appropriate standard of review was whether the conviction amounted to a complete miscarriage of justice and concluded that Grasso had failed to meet that burden. Id. at 25, 84 P.3d 859 (Madsen, J., concurring). The remaining justices analyzed the confrontation clause claim. In a plurality opinion, three of these justices applied the Clark test, requiring only that the victim be asked about the event and hearsay statement, and that the defendant be provided an opportunity for full cross-examination. Id. at 17, 84 P.3d 859. In explaining the relationship between Rohrich and Clark, the plurality reasoned that the Clark court limited the Rohrich holding to circumstances where the State expressly acted to shield the child from testifying, and in Grasso, the prosecutor had improperly shielded the child by suggesting she answer, "`I don't want to talk about it.'" Id. at 16-17, 84 P.3d 859. However, after excising the questions to which she answered, "`I don't want to talk about it,'" the plurality concluded that the child's remaining direct testimony fell squarely within the parameters of Clark. Id. The child was asked about the charged events and answered, "`I can't remember,'" "a constitutionally acceptable response" under Owens. Id. at 17, 84 P.3d 859. In addition, nothing prevented the defense from cross-examining the child about the truth of her out-of-court statements or her lack of memory of the details. Id. at 18, 84 P.3d 859. Grasso had enjoyed the traditional protections of the confrontation clause: the child was under oath, defense counsel had conducted some effective cross-examination and nothing prevented further cross-examination about the out-of-court statements, and the jury witnessed the child's demeanor throughout. Id. at 18, 84 P.3d 859. Thus, the plurality concluded that so long as a witness is asked about the charged events and the hearsay statements on direct, the confrontation clause is not violated if the witness answers that he or she cannot remember the events or statements. Id.
¶ 25 The four remaining justices disagreed. Their dissenting opinion acknowledged that "Clark unequivocally requires the prosecution to ask the declarant `about the event and the hearsay statement'" but concluded that the prosecutor's actions in Grasso amounted to shielding more akin to Rohrich than Clark. Id. at 28-29, 84 P.3d 859 (Sanders, J., dissenting) (quoting Clark, 139 Wash.2d at 161, 985 P.2d 377). The dissent also asserted that, though not explicitly stated in Clark, the Clark case implied that the child must be asked about the contents of her prior out-of-court statements. Asking whether the child remembered the general conversation was not enough. See id. at 32, 84 P.3d 859. Then, the dissent concluded that because the child never testified about the contents of her prior statements, they should have been excluded. Id. at 33, 84 P.3d 859.
¶ 26 Only a few weeks after Grasso was published, the United States Supreme Court issued its opinion in Crawford, 541 U.S. 36, 124 S.Ct. 1354. The Crawford Court held that a testimonial pretrial statement made by a declarant absent from trial may be admitted in a criminal case only if the declarant is truly unavailable and only if there has been a prior opportunity for cross-examination. Id. at 59, 68, 124 S.Ct. 1354. In footnote 9 of the *1191 Crawford opinion, the Court emphasized that rule's limitations:
Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. See California v. Green, 399 U.S. 149, 162 [90 S.Ct. 1930, 26 L.Ed.2d 489] (1970). It is therefore irrelevant that the reliability of some out-of-court statements "`cannot be replicated, even if the declarant testifies to the same matters in court.'" Post, at 74 [124 S.Ct. at 1377] (quoting United States v. Inadi, 475 U.S. 387, 395[, 106 S.Ct. 1121, 89 L.Ed.2d 390] (1986)). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.
Id. at 59 n. 9, 124 S.Ct. 1354. It is important to note that the Crawford Court's historical discussion condemned the admission of out-of-court statements where the declarant was entirely absent from trial. Id. at 59-60, 124 S.Ct. 1354 ("Our cases have thus remained faithful to the Framers' understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." (emphasis added)). Significantly, Crawford neither overruled nor called into question either Fensterer or Owens.
¶ 27 Referring to Crawford's footnote 9, the State argues that after Crawford, whether a witness has testified sufficiently to meet constitutional availability requirements still depends upon whether the declarant takes the stand and is asked both about the alleged underlying events and any prior statements admitted at trial, as articulated in Clark. In contrast, Price argues that the Rohrich rule should apply here because, he asserts, R.T. was insulated from any meaningful cross-examination.
¶ 28 The facts of Owens, Rohrich, Clark, and Grasso are all distinguishable from this case in some way. In Owens, the victim could remember making the out-of-court statement and reciting the contents, even if he could not remember seeing his assailant. In Rohrich, the witness was on the stand, but the prosecutor did not ask any questions relating to the alleged events or the prior statements. In Clark, the prosecutor asked the questions and did not seek to shield the child, but the child recanted. In Grasso, the prosecutor shielded the child, at least in part, but the child also responded that she could not remember the incident or some of her hearsay statements. Here, the prosecutor asked whether Price had touched R.T. anywhere else besides hugs, and she specifically asked R.T. what she told her mom and Detective Bergt about Price. Thus, the prosecutor in this case asked about the underlying events and about the contents of R.T.'s statements to her mother and to Detective Bergt. While R.T. did not adopt her prior statements on the stand or recant, the questioning in this case is more like Clark than Grasso and Rohrich because there was no effort here to shield the child from responding to the questions.[6] The Clark rule squarely applies here because the key to the Rohrich case, prosecutorial shielding, did not occur.
¶ 29 To satisfy the Clark test, R.T. must have been asked about both the underlying events and about her prior statements. That is what the prosecutor did. The prosecutor asked R.T. directly if Price had touched her (other than hugging), and she asked R.T. to tell the jury what she had said to her mother and to Detective Bergt.
¶ 30 The Clark test also requires that the defendant have an opportunity for full cross-examination. "`[T]he Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."'" Owens, 484 U.S. at 559, 108 S.Ct. 838 (quoting Stincer, 482 U.S. at 739, 107 S.Ct. 2658 *1192 (quoting Fensterer, 474 U.S. at 20, 106 S.Ct. 292)). When analyzing the three purposes of the confrontation clause set forth in Green, it becomes clear that a witness testifying to a lapse in memory can satisfy those purposes. Green, 399 U.S. at 158, 90 S.Ct. 1930. The first purpose, ensuring that the witness must testify under oath, is satisfied if a declarant is present and testifying at trial on the stand. Id.
¶ 31 With regard to the second purpose, to subject the witness to cross-examination, the confrontation clause is generally satisfied when the defense is given a full and fair opportunity to expose the memory lapse through cross-examination, thereby calling attention to the reasons for giving scant weight to the witness's testimony. Fensterer, 474 U.S. at 22, 106 S.Ct. 292. Emphasis on the witness's forgetfulness will not always achieve a not guilty verdict, but successful cross-examination is not the constitutional guaranty. Owens, 484 U.S. at 560, 108 S.Ct. 838; see also Fensterer, 474 U.S. at 22, 106 S.Ct. 292 (the confrontation clause offers no guaranty that every witness called by the prosecution will refrain from giving testimony that is "marred by forgetfulness").
¶ 32 With regard to the third purpose, exposing the jury to the witness's demeanor, when the witness takes the stand and is asked about the events and hearsay statements, the fact finder can determine whether the witness is telling the truth about her lapse of memory or evading. Fowler v. State, 829 N.E.2d 459, 466 (Ind.2005) ("The feigned or real absence of memory is itself a factor for the trier of fact to establish, but does not render the witness unavailable."); see also United States v. Keeter, 130 F.3d 297, 302 (7th Cir.1997) (witness who feigns amnesia during trial is subject to cross-examination for purposes of confrontation clause). In this case, defense counsel emphasized R.T.'s hearing testimony (in which she described Price's improper touching) in order to contradict her claim at trial that she could not remember. The jury was thus provided an opportunity to evaluate whether it believed R.T. forgot or whether she was evading for some other reason.
¶ 33 In sum, all of the purposes of the confrontation clause are satisfied even when a witness answers that he or she is unable to recall. Thus, we hold that when a witness is asked questions about the events at issue and about his or her prior statements, but answers that he or she is unable to remember the charged events or the prior statements, this provides the defendant sufficient opportunity for cross-examination to satisfy the confrontation clause. We conclude that a witness's inability to remember does not implicate Crawford nor foreclose admission of pretrial statements. Accord People v. Perez, 82 Cal.App.4th 760, 766, 98 Cal.Rptr.2d 522 (2000); People v. Candelaria, 107 P.3d 1080, 1087 (Colo.App.2004); State v. Pierre, 277 Conn. 42, 890 A.2d 474, 502 (2006); Mercer v. United States, 864 A.2d 110, 114-15 (D.C.App.2004); People v. Sharp, 355 Ill. App.3d 786, 825 N.E.2d 706, 713, 292 Ill.Dec. 118 (2005); State v. Gorman, 2004 ME 90, 854 A.2d 1164, 1177-78 (2004). Admission of R.T.'s out-of-court statements to her mother and to Detective Bergt did not violate the confrontation clause in this case. Indeed, R.T. was physically present in the courtroom and she confronted Price face to face, she was competent to testify and testified under oath, the defense retained the full opportunity to cross-examine her and in fact called attention to her lack of memory in closing, and the judge, jury, and defendant were able to view R.T.'s demeanor and body language while she was on the stand such that they could evaluate for themselves whether R.T. was being truthful about her lack of memory.

III

Conclusion
¶ 34 The Crawford rule leaves intact the principle that a witness who is present and testifying at trial does not present a confrontation clause issue. Crawford also left intact the governing case law analyzing the sufficiency of a witness's testimony for confrontation clause purposes. Because the prosecutor did not attempt to shield the witness from testifying, Clark provides the appropriate rule in this case, and the prosecutor's questions here were sufficient to satisfy Clark. We also conclude that because all of *1193 the purposes of the confrontation clause are satisfied even when a witness answers that he or she is unable to recall, an inability to remember does not render a witness unavailable for confrontation clause purposes. We affirm the Court of Appeals.
WE CONCUR: Justices SUSAN OWENS, BARBARA A. MADSEN, MARY E. FAIRHURST, RICHARD B. SANDERS and JAMES M. JOHNSON.
ALEXANDER, C.J. (dissenting).
¶ 35 I disagree with the majority's conclusion that R.T. was available as a witness for purposes of the confrontation clause. A witness who testifies only that she cannot remember the contents of her hearsay statements or the acts described in those statements cannot be fully and effectively cross-examined. Thus, admission of those hearsay statements, if they are testimonial, violates the defendant's right to confrontation, afforded by the sixth amendment to the United States Constitution. Because the majority holds that R.T. was available and her testimony satisfied the requirements of the confrontation clause, I respectfully dissent.
¶ 36 As the majority notes, the confrontation clause precludes the admission of prior statements only if the declarant is unavailable at trial. Thus, the central issue here is whether R.T. was available at trial, for purposes of the confrontation clause. In State v. Rohrich, 132 Wash.2d 472, 939 P.2d 697 (1997), we laid out the test for availability of an alleged victim of child molestation who takes the stand at trial, holding that she must "give testimony describing the acts of sexual contact alleged in the hearsay." Id. at 474, 939 P.2d 697. The majority applies a more limited test because it considers the lack of prosecutorial shielding in this case to distinguish it from Rohrich.
¶ 37 I disagree with the majority's determination that "the key to the Rohrich case" was "prosecutorial shielding." Majority at 20. Our holding in Rohrich was clear: "We conclude a child does not `testify' . . . when she does not give testimony describing the acts of sexual contact alleged in the hearsay." Rohrich, 132 Wash.2d at 474, 939 P.2d 697. We further explained, "The opportunity to cross-examine means more than affording the defendant the opportunity to hail the witness to court for examination. It requires the State to elicit the damaging testimony from the witness so the defendant may cross-examine if he so chooses." Id. at 478, 939 P.2d 697 (footnote omitted). The decision focused not on whether the prosecution had actively shielded the witness from cross-examination, but rather on whether the witness had actively testified about the hearsay statements and the acts on which they were based. When a witness fails to do so, it prevents the defendant from fully exercising his or her right to cross-examine the witness. Id. at 478-79, 939 P.2d 697.
¶ 38 In State v. Clark, 139 Wash.2d 152, 985 P.2d 377 (1999), I dissented because I felt the majority incorrectly applied Rohrich. In my dissent, I concluded that a child witness who took the stand and denied her prior hearsay statements did not testify for purposes of the confrontation clause because she did not describe the events forming the basis for those statements. For that reason, I found that admission of her statements violated the defendant's right to confrontation. I still believe that this is the proper interpretation of our holding in Rohrich. To satisfy the confrontation clause, a witness must "describe[] the acts of sexual contact alleged in the hearsay," or the hearsay cannot be admitted. Rohrich, 132 Wash.2d at 481, 939 P.2d 697.
¶ 39 Here, even more than in Clark, the child witness, R.T., failed to meet this requirement. As Judge Armstrong explained in his dissent below,
Although the State technically asked about the alleged abuse and her hearsay statements, R.I.T.'s responses provided no information on which she could be effectively cross-examined. Unlike the victim in Clark, R.I.T. did not say that her statements were lies; she gave no information at all. Accordingly, she was insulated from any meaningful cross-examination on bias, motive, or her ability to accurately relate what happened. In fact, cross-examining *1194 R.I.T. would likely produce testimony incriminating Price. . . .
State v. Price, 127 Wash.App. 193, 209, 110 P.3d 1171 (2005) (Armstrong, J., dissenting) (citation omitted). This put petitioner in precisely the same impermissible position we described in Rohrich: having to call R.T. as his own witness or waive his right to confrontation.
¶ 40 Since we decided Clark, the United States Supreme Court reiterated the centrality of the opportunity to cross-examine witnesses in a confrontation clause analysis. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Court held in Crawford that testimonial hearsay by a declarant absent from trial can be admitted only if the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant. Id. at 54, 124 S.Ct. 1354.
¶ 41 The majority points to a footnote in Crawford that says there is no confrontation clause problem with admitting testimonial hearsay if "`the declarant appears for cross-examination at trial.'" Majority at 1191 (quoting Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354). The majority believes that this case is the sort envisioned by that note. But Crawford requires more than mere physical presence of a declarant; it declares that the confrontation clause requires an opportunity to cross-examine a witness. Although a defendant is not guaranteed "cross-examination that is effective in whatever way, and to whatever extent" he or she wants, Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985), the opportunity for cross-examination must be more than a mere sham. The Crawford decision refers us to California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), which held that hearsay statements are only admissible where the declarant is "subject to full and effective cross-examination." R.T. was not subject to effective cross-examination because she did not describe the acts alleged in her prior statements, swear that the statements were truthful when made, or even affirm having made the particular statements at issue. In short, R.T.'s testimony provided no information on which she could be effectively cross-examined.
¶ 42 However, under Crawford, petitioner's right to confrontation was violated only if R.T.'s prior statements that were admitted amounted to testimonial hearsay. The second question in this case, thereforeone that the majority does not reachis whether R.T.'s prior statements were testimonial hearsay. R.T. made separate statements to her mother and to a detective, which we must look at independently.
¶ 43 In State v. Shafer, 156 Wash.2d 381, 128 P.3d 87 (2006), we held statements made to a mother by a child victim of molestation were nontestimonial. In that case police were not involved, the statements were essentially spontaneous, and the child "had no reason to expect that her statements would be used at a trial." Id. at 390, 128 P.3d 87. We also noted that Crawford categorized "casual remarks made to family, friends, and nongovernment agents" as generally nontestimonial. Id. at 389, 128 P.3d 87.
¶ 44 As in Shafer, R.T.'s statement to her mother was made spontaneously and outside the presence of police. R.T. was evidently complaining to her mother of pain, in her home one night before bed. In such a context, neither R.T. nor a reasonable person in her position would have had any reason to expect her statement to be used in a trial. Thus, R.T.'s statement to her mother was nontestimonial, and its admission did not implicate petitioner's right to confrontation.
¶ 45 However, R.T.'s statement to the detective falls squarely within the Supreme Court's minimal definition of testimonial hearsay. "Whatever else the term covers," the Court stated, "it applies at a minimum to prior testimony . . . and to police interrogations." Crawford, 541 U.S. at 68, 124 S.Ct. 1354. R.T.'s statement to the detective was made in response to the detective's questions during an interview conducted in anticipation of a potential trial. Thus, it falls within the category of police interrogations and constitutes testimonial hearsay.
¶ 46 Since R.T.'s statement to the detective was testimonial hearsay, it should have been admitted only if R.T. were "subject to full *1195 and effective cross-examination," Green, 399 U.S. at 158, 90 S.Ct. 1930, or if R.T. were unavailable and petitioner had a prior opportunity to effectively cross-examine her. Because I find that R.T. was never subject to full and effective cross-examination, I would hold that admission of her statement to the detective and the tape of that interview violated petitioner's constitutional right to confrontation. Accordingly, I would reverse the Court of Appeals as to the statements made to the detective and remand for a new trial.
WE CONCUR: Justices TOM CHAMBERS and CHARLES W. JOHNSON.
[DOCNUMCHK]
NOTES
[1] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[2] RCW 9A.44.120 provides, in part, that

[a] statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another . . . not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings . . . in the courts of the state of Washington, if:
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child . . .
(3) (a) Testifies at the proceedings. . . .
[3] We note that Price did not object or move to strike the admission of R.T.'s pretrial statements when it became clear that R.T. could not remember the relevant incident or her hearsay statements. Even so, the alleged error here implicates a question of constitutional magnitude, and if the asserted error had practical and identifiable consequences, then it was manifest, thereby satisfying RAP 2.5(a). State v. Clark, 139 Wash.2d 152, 156, 985 P.2d 377 (1999); State v. WWJ Corp., 138 Wash.2d 595, 603, 980 P.2d 1257 (1999).
[4] Washington Constitutional Claim: Article I, section 22 of the Washington Constitution similarly provides, "[i]n criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face." Recently, in State v. Shafer, 156 Wash.2d 381, 128 P.3d 87 (2006) we noted that five justices of this court have concluded that article I, section 22 can offer higher protection than the Sixth Amendment with regard to a defendant's right of confrontation. Id. at 391-92, 128 P.3d 87 (citing State v. Foster, 135 Wash.2d 441, 957 P.2d 712 (1998)). Foster addressed whether a child's testimony by closed circuit television violated the Washington Constitution's "face to face" language. Foster, 135 Wash.2d at 449-50, 957 P.2d 712. Price does not point to any case where we have determined that article I, section 22 provides greater protection than the federal provision in this context, where the child witness faced the defendant in the courtroom. Price did not brief this issue in accordance with State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986). Pet. for Review at 5. Therefore, we analyze his claim within the bounds of the Sixth Amendment. State v. Smith, 148 Wash.2d 122, 131, 59 P.3d 74 (2002).
[5] ER 804(a)(3) declares that a witness is unavailable if he or she testifies to lack of memory of the subject matter of the out-of-court statement. However, after Crawford, a state's evidence rules no longer govern confrontation clause questions. See United States v. Cromer, 389 F.3d 662, 679 (6th Cir.2004). Both the United States Supreme Court and this court have drawn a distinction between unavailability for confrontation clause purposes, and unavailability for hearsay purposes. See United States v. Owens, 484 U.S. 554, 559-63, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (discussing first whether declarant's lack of memory allowed confrontation and then discussing whether lack of memory rendered declarant unavailable for purposes of the evidence rules); State v. Ryan, 103 Wash.2d 165, 171, 691 P.2d 197 (1984) (distinguishing between unavailability under the hearsay rule and unavailability "in the constitutional sense"). Thus, while R.T. was unavailable for purposes of the hearsay rule, the rule does not govern whether she was unavailable in the constitutional sense.
[6] While the facts of these cases also involved various levels of intensity of cross-examination, a majority of judges in Grasso agreed that it is the questioning on direct, not the questioning on cross-examination, that is key to the analysis. Grasso, 151 Wash.2d at 29-30, 84 P.3d 859 (Sanders, J., dissenting), 25 (Madsen, J., concurring). Thus, the fact that the defense did not cross-examine R.T. in this case is of no consequence because it is the opportunity for cross-examination that we must analyze.