IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33000-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIN THOMAS MITCHELL BONG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Erin Bong appeals from his conviction for second degree assault, domestic violence. He contends that the trial court impermissibly allowed the jury to hear his victim's 911 call and erroneously admitted a social worker's report concerning assistance for the victim. We hold that the trial court did not commit error and affirm the conviction.

FACTS

In May 2013, Erin Bong lived with his girlfriend Melody Loudermilk in Bremerton. Loudermilk took several prescription medications: Gabapentin for chronic pain, Prozac for depression, and Flexeril, a muscle relaxant, among others.

On the evening of May 3, 2013, Erin Bong and Melody Loudermilk drank wine

and beer. When the two commenced to argue, Loudermilk removed herself to a bedroom, where she took antianxiety medication. Bong entered the room and angrily grabbed Loudermilk's wrist. Bong pummeled Loudermilk, thereby causing bruised arms and a fractured eye socket. Loudermilk escaped Bong's grasp and locked herself inside the home's computer room.

Melody Loudermilk phoned 911 emergency services. Loudermilk told the 911 operator that Erin Bong stole her money and her phone. Loudermilk also reported to the operator that Bong had drank alcohol and struck her in the face. The call ended before police arrived:

> [Operator]: Alright. Are you just going to stay away from him until the aid crew, or the ambulance—I'm sorry—the police get there?
> [Loudermilk]: Yes.
> [Operator]: Okay. We do have them dispatched and I want you to call us back if anything changes, okay?
> [Loudermilk]: (inaudible)
> [Operator]: And, he's still there? Is he angry with you?
> [Loudermilk]: He's very angry with me.
> [Operator]: And he does know you're calling the police?
> [Loudermilk]: Yes
> [Operator]: No guns or anything like that in the house.
> [Loudermilk]: No.
> [Operator]: Alright. I want you to—I want you to really try to stay separated from him. Call us back if anything changes before they get there. Okay?
> [Loudermilk]: Okay.
> [Operator]: Alright. Are you okay to get off the line with me or do you want me to stay on the line with you?
> [Loudermilk]: Uh. I'll be alright.
> [Operator]: Alright. Call us back if you change your mind, okay?
> [Loudermilk]: Okay. Thank you.

2

[Operator]: Uh-huh, bye-bye.

Clerk's Papers (CP) at 141-42.

City of Bremerton Police Officer William Prouse arrived at Erin Bong's and Melody Loudermilk's residence. Bong answered the door. Bong appeared intoxicated, but calm. Bong told Officer Prouse that Loudermilk and he argued but engaged in no physical contact. Nevertheless, Prouse saw Loudermilk crying with a swollen face. Prouse arrested Erin Bong.

After Erin Bong's arrest, Melody Loudermilk went to Bremerton's Harrison Medical Center, where Dr. Robert Ast examined her. According to Ast, imaging showed a fracture of the orbit, or the floor of the eye socket. Loudermilk also suffered from bruises on her legs, abrasions on her arms, swelling and bruising of her cheeks, and tenderness in her right wrist.

Dr. Robert Ast testified at trial:

> [Melody Loudermilk] reported that she had been assaulted. Her statement was that she was getting ready for bed, and her boyfriend came into the room. And she—in quotes what she said was he was saying things that didn't make sense and that he called her worthless and that the patient stated that he punched her in the face, at which time she ran to another room and started to sit down in a chair. And then she reported that he flipped the chair that she was in, causing her to tumble to the ground. And then she reported that he pushed and grabbed her several more times.

Report of Proceedings (RP) at 100-01.

Harrison Medical Center routinely refers one who sustains injuries similar to

Melody Loudermilk's injuries to a social worker or counselor. The medical center

wishes to protect a patient from returning to an environment where she will sustain more

injuries. To this end, Melody Loudermilk met with a social worker at Harrison Medical

Center. The social worker wrote a report, which reads:

> Discharge Planning Comments:
> 5/4/2013 0108 by PAMELA S HYSONG
> Pt [patient] comes in tonight via ambulance after being "beat" by her S/O
> [significant other]. . . . S/O was arrested and brought to jail. Pt has
> multiple injuries, and in talking to the attending physician she will most
> likely be d/c'd [discharged] tonight. Pt does not wish to go to a shelter; she
> wants to go home. Pt states that there is no one else there, and that she is
> safe at home (at least when S/O is not there). Pt states that this S/O will not
> be coming home, and that when he does her two brothers and her child's
> father will be there to ensure that she is safe. Pt states that she will allow
> him in the home only to get his belongings, and then to get "out." Pt denies
> SI/HI [suicidal ideation/homicidal ideation]. Pt is given multiple resource
> information: YMCA-DV, Community Resource Guide, and Counseling
> information. Pt is also given an "Application for Benefits, "Crime
> Victims." Pt will d/c home when medically cleared.

CP at 154.

## PROCEDURE

The State of Washington charged Erin Bong with second degree assault and

further alleged that the assault constituted domestic violence.

At trial, the State called five witnesses: Officer William Prouse, the responding

officer; Eliseo Gonzalez, a records custodian for the Department of Licensing; Therese

Ungren, a records custodian for Kitsap County's 911 call center; Dr. Robert Ast, the

attending physician; and Melody Loudermilk. Loudermilk testified that she did not remember much of the night, including phoning 911. She did not recall events between the moments when Erin Bong grabbed her wrist and law enforcement officers photographed her.

Over Erin Bong's objection, the trial court permitted the jury to hear Melody Loudermilk's 911 call. Also over Bong's objection, the trial court admitted, as an exhibit, the report of Harrison Medical Center's social worker.

The jury found Erin Bong guilty of second degree assault. The jury also found the assault to be one of domestic violence since Bong and Melody Loudermilk lived in the same household.

## LAW AND ANALYSIS

On appeal, Erin Bong contends: (1) the trial court violated his constitutional rights to confront witnesses against him when it permitted the playing of the recording of Melody Loudermilk's emergency call to 911 to the jury, and (2) the trial court erred when it admitted the social worker's report into evidence under ER 803(a)(4) because the report contained statements not made for the purpose of medical diagnosis or treatment.

### 911 Call

Erin Bong contends the trial court violated his constitutional rights to confront witnesses when it admitted the recording of Melody Loudermilk's call to 911. Bong labels the recording as testimonial hearsay. This appeals court reviews whether or not a

statement was hearsay de novo. *State v. Neal*, 144 Wn.2d 600, 607, 30 P.3d 1255 (2001). This court also reviews de novo an alleged violation of the confrontation clause. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). If an exception applies, the hearsay may be admissible. ER 802.

Even hearsay with an applicable exception becomes inadmissible if its admission violates a defendant's confrontation clause rights precluding testimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). A declarant's out-of-court statement is testimonial if, in the absence of an ongoing emergency, the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Davis*, 547 U.S. at 822. The "admission of testimonial hearsay statements of a witness who does not appear at a criminal trial violates the confrontation clause of the Sixth Amendment unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity for cross examination." *State v. Beadle*, 173 Wn.2d 97, 107, 265 P.3d 863 (2011) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

Erin Bong and the State dispute whether the 911 call was testimonial. Bong emphasizes the 911 call ending before police arrived to show the absence of an "ongoing emergency." *Davis v. Washington*, 547 U.S. at 822. Assuming the 911 recording was

testimonial, Bong argues that Melody Loudermilk did not appear at trial, for confrontation clause purposes, because she testified at trial that she had no memory of the phone call. This court need not decide whether the 911 call was testimonial because, regardless, under our Supreme Court's holding in *State v. Price*, 158 Wn.2d 630, 146 P.3d 1183 (2006), Loudermilk appeared at Bong's trial.

In *State v. Price*, the State charged Charles Price with molesting a child, after the child reported the abuse to her mother and a police detective. At trial, the child testified that she could identify the defendant, but could not remember the abuse or reporting it to her mother and the authorities. The state high court concluded that the admission of the child's out-of-court statements did not violate Price's right of confrontation because:

> [T]he confrontation clause is generally satisfied when the defense is given a full and fair opportunity to expose the memory lapse through cross-examination, thereby calling attention to the reasons for giving scant weight to the witness's testimony. . . . when a witness is asked questions about the events at issue and about his or her prior statements, but answers that he or she is unable to remember the charged events or the prior statements, this provides the defendant sufficient opportunity for cross-examination to satisfy the confrontation clause.

*Price*, 158 Wn.2d at 649-50.

Erin Bong had a full and fair opportunity to cross-examine Melody Loudermilk regarding the 911 call. The State specifically asked Loudermilk on direct examination whether she remembered phoning 911. Loudermilk identified the voice in the call as her own, but responded that she could not remember making the call. Defense counsel cross-

7

examined Loudermilk about the call. Loudermilk again responded that she did not remember. The State did not abridge Bong's constitutional right to confront a witness.

## Social Worker Report

Erin Bong next contends that the trial court erred when it admitted the report of Harrison Hospital's social worker under ER 803(a)(4) because the report contained statements not made for the purpose of medical diagnosis or treatment. We disagree.

ER 803(a)(4) provides an exception to the general prohibition of hearsay testimony for statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Because ER 803(a)(4) pertains to statements "reasonably pertinent to diagnosis or treatment," it allows statements regarding causation of injury, but generally not statements attributing fault. *State v. Redmond*, 150 Wn.2d 489, 496, 78 P.3d 1001 (2003) (citing *State v. Woods*, 143 Wn.2d 561, 602, 23 P.3d 1046 (2001)).

For a hearsay statement to be admitted under ER 803(a)(4), the statement need not be about physical injuries. *In re the Dependency of M.P.*, 76 Wn. App. 87, 92, 882 P.2d 1180 (1994). To determine whether a statement was made for purposes of medical diagnosis or treatment, courts review whether (1) the declarant's motive was to promote treatment, and (2) the medical professional reasonably relied on the statement for

treatment purposes. *In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 20, 84 P.3d 859 (2004).

Erin Bong argues that since Melody Loudermilk spoke to a social worker rather than her treating physician, Loudermilk did not utter the statements for purposes of medical diagnosis or treatment. This argument fails because it presupposes that Harrison Medical Center needed to attend to only Loudermilk's physical injuries. Doctor Ast explained, "We want to make sure that the patient is going to be safe and that they're returning to an environment where they're not going to get reinjured." RP at 105. To this end, Melody Loudermilk met with a social worker at Harrison. Loudermilk identified her abuser as her live-in boyfriend, and the social worker ensured that Loudermilk was not returning to an unsafe home.

Although statements attributing fault are generally not relevant to diagnosis or treatment, this court has found statements attributing fault to an abuser in a domestic violence case are an exception because the identity of the abuser is pertinent and necessary to the victim's treatment. *State v. Moses*, 129 Wn. App. 718, 729, 119 P.3d 906 (2005). Melody Loudermilk's statements to the social worker, including the identity of her abuser, were pertinent and necessary to her treatment. The statements to the social worker served to prevent reinjury.

A controlling decision is *State v. Sims*, 77 Wn. App. 236, 890 P.2d 521 (1995). The State prosecuted Keith Sims for assaulting Anita Bellinger, with whom he lived.

Bellinger suffered an injury to her jaw. Bellinger sought treatment at Providence Medical Center. Two physicians and a social worker testified at trial that Bellinger, while at Providence, reported she had been struck by a man with whom she once lived. On appeal, Sims assigned error to the admission of this testimony as barred by the hearsay rule. This court rejected the argument because a statement attributing fault to an abuser can be reasonably pertinent to treatment in domestic sexual assault cases involving adults. This court quoted from *United States v. Joe*, 8 F.3d 1488, 1494-95 (10th Cir. 1993).

> All victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser. The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household. In the domestic sexual abuse case, for example, the treating physician may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere. In short, the domestic sexual abuser's identity is admissible under Rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes "reasonably pertinent" to the victim's proper treatment.

*State v. Sims*, 77 Wn. App. at 239-240.

## Statement of Additional Grounds

In his statement of additional grounds (SAG), Erin Bong contends: a juror knew him and Loudermilk personally; a juror slept through the State's closing argument; his defense counsel failed to interview Loudermilk until five minutes prior to her testifying;

10

and his defense counsel stated to the prosecuting attorney, "I won't object to anything you say if you won't object to what I say." SAG at 1. The purported facts underlying these contentions are not in the appellate record. As such, we are unable to review these contentions. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

## CONCLUSION

We confirm Erin Bong's conviction for a domestic violence assault.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Korsmo, J.

11