
FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 JUN 16 AM 9: 15

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69451-1-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| JEFFREY M. KINZLE, | ) | PUBLISHED OPINION |
| Appellant. | ) ) | FILED: June 16, 2014 |

BECKER, J. — A jury found Jeffrey Kinzle guilty of two counts of first degree child molestation involving two sisters. When the younger girl testified at trial, the prosecutor avoided asking her direct questions about the incident and her previous statements. As a result, she was not subject to full and effective cross-examination. We hold that the admission of the younger girl's out-of-court statements to prove that she was molested violated Kinzle's right to confront witnesses. The conviction for that count must be reversed.

## FACTS

On March 17, 2011, Kinzle stayed at the apartment of a friend who lived with his girl friend, ES, and their two daughters, eight-year-old R and four-year-old N. ES returned to the apartment after Kinzle had gone to bed. She found the girls sitting under a small table in her bedroom. The girls were crying. They told their mother that Kinzle "rubbed some stuff" on their private parts. ES found

prescription eye cream in the girls' bedroom. The cream had been stored in the bathroom medicine cabinet. ES called the police and then took the girls to the hospital. Paula Newman Skomski, a forensic nurse examiner employed by the hospital, interviewed and examined both girls.

On March 21, 2011, at the request of a police detective, the girls were interviewed by Razi Leptich, a child interview specialist. The interview was recorded. In response to questions, N, the four-year-old, told Leptich that her "dad's friend" "Jeff" put "eye cream" on her "butt" and "pee-pee." Laboratory testing revealed traces of eye cream on R's underwear and on swabs from both girls' perineal areas.

The State charged Kinzle with two counts of first degree child molestation. At a pretrial hearing on September 10, 2012, the court determined that both R and N were competent to testify and ruled that certain out-of-court statements made by each child were admissible under Washington's statutory exception to the hearsay rule, RCW 9A.44.120.

Kinzle's jury trial occurred September 12-14, 2012. At trial, the prosecutor asked the older girl, R, whether any of her dad's friends were in the courtroom. She identified Kinzle. He asked if she remembered the last time she saw Kinzle at her house. When she said it had been a year, the prosecutor asked, "Is there a particular reason that you don't see him anymore?" R testified, "When he was over, he put stuff on a private part." When the prosecutor asked what she meant by "stuff" and "private part," R testified, consistent with her previous statements, that Kinzle rubbed "lotion" on her "butt and pee-pee." It is undisputed that

2

Kinzle's right to confront R was not violated and that the State sufficiently proved count 1.

During direct examination of N, who by this time was six years old, the prosecutor did not ask any direct questions about Kinzle. The prosecutor asked N about school, about the difference between the truth and lies, and what she does for fun. Then he began asking about her dad's friends. N denied knowing the names of her dad's friends or seeing them at her home or in court. The prosecutor asked, "Never seen anybody in here before?" N identified the prosecutor and a "lady in the back." The prosecutor went on to ask N whether she "ever talked to any police," or "ever talked to any doctors." N answered that she talked to doctors "When I get shots for school."

The prosecutor asked N whether she had any shots this year. She said, "Uh-uh." The prosecutor said, "Lucky you."

At this point, without being asked another question, N volunteered, "My sister told them." The prosecutor did not ask N to explain what she meant by that statement.

Instead, the prosecutor asked questions about peripheral details. He asked N to describe her house and the furniture in her parents' room, to name her favorite toy, and to say where she slept and with whom. He asked where the family kept medicines, whether she had eye lotion, and whether she'd ever been scared or had bad dreams. At no point during direct examination did he ask her if she recognized Kinzle or if she remembered telling any of the interviewers that "Jeff" had put eye cream on her private parts.

On cross-examination, defense counsel asked N who she lived with, whether her parents argued, and whether she remembered telling a doctor during a pretrial interview that her parents argued quite a bit. N testified that she never heard her parents argue and she denied any memory of speaking to the doctor about her parents.

On redirect, the prosecutor showed N a picture of her parents' room showing a small table and asked whether she ever hid underneath it. N said she only hid under it during hide-and-seek with her sister.

When N left the witness stand, she had not testified that Kinzle molested her. The State relied on her out-of-court statements to Skomski and Leptich to prove count 2.

The jury found Kinzle guilty on both counts. Kinzle appeals the conviction for count 2, the count involving N.

## DISCUSSION

Kinzle contends that the admission of the testimony concerning the out-of-court statements made by N violated his constitutional right to confront adverse witnesses. We agree. N was not subject to a full and effective cross-examination because while N was on the witness stand, the prosecutor did not question her directly about the alleged incident of molestation and her prior statements about it.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. See State v. Price, 158

Wn.2d 630, 639 n.4, 146 P.3d 1183 (2006). We review de novo whether admission of N's hearsay statements violated Kinzle's confrontation right. Price, 158 Wn.2d at 638-39.

The right to confrontation is not violated by admitting a declarant's hearsay statements if the declarant testifies as a witness and is subject to "'full and effective cross-examination.'" Price, 158 Wn.2d at 640, quoting California v. Green, 399 U.S. 149, 158, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). Full and effective cross-examination is possible only if the State asks the witness during direct examination about the incident and his or her prior statements about the incident. Green, 399 U.S. at 164; Price, 158 Wn.2d at 650.

Price is one of several cases in which Washington courts have considered whether a child victim testified adequately for constitutional confrontation purposes to support admission of prior out-of-court statements otherwise properly admissible under the rules of evidence. Price, 158 Wn.2d at 642-50; State v. Rohrich, 132 Wn.2d 472, 939 P.2d 697 (1997); State v. Clark, 139 Wn.2d 152, 985 P.2d 377 (1999); In re Pers. Restraint of Grasso, 151 Wn.2d 1, 9, 84 P.3d 859 (2004).

In Rohrich, the State called the alleged victim of rape and child molestation to testify and asked her only innocuous background questions about her school, her birthday, and her cat's name. Rohrich, 132 Wn.2d at 474. The defendant's conviction was reversed. "The State's failure to adequately draw out testimony from the child witness before admitting the child's hearsay puts the defendant in a 'constitutionally impermissible Catch-22' of calling the child for

direct or waiving his confrontation rights." Rohrich, 132 Wn.2d at 478, quoting

Lowery v. Collins, 996 F.2d 770, 771-72 (5th Cir. 1993).

In contrast, in Clark there was no confrontation violation because the

prosecutor directly asked E., the recanting victim, about the alleged acts.

Though she denied the acts occurred and said her previous statements were

lies, the defendant had a full opportunity to cross-examine her concerning her

accusation because the State had elicited her testimony on the subject on direct

examination:

> In Rohrich the state avoided questioning the child witness about the alleged acts, thus directly preventing the defendant from cross-examining her. However in the present case there was no such evasion: The state asked E. about the alleged acts and she answered by denying they occurred. The state also asked E. about her prior hearsay statements which she acknowledged making but claimed were lies. Far from being placed in a constitutionally impermissible Catch-22 of calling the child for direct or waiving his confrontation rights, Clark had a full opportunity to cross-examine E. about the alleged acts and about her hearsay statements.

Clark, 139 Wn.2d at 161.

In Price, the defendant was charged with molesting a child who had

reported the abuse to her mother and a police detective. Price, 158 Wn.2d at

633-34. At trial, in response to the prosecutor's questions, the child identified the

defendant, who she called "Chucky," but testified that she forgot what he did to

her and forgot what she told her mother and the detective about him. Price, 158

Wn.2d at 635-36. Specifically, the prosecutor asked, "Besides hugs, did Chucky

ever touch you anywhere?" Price, 158 Wn.2d at 635. The child's response was

"Me forgot again." Price, 158 Wn.2d at 636. The State proved the crime with the

child's previous out-of-court statements. Despite the child's professed inability to

recall the earlier events and her earlier statements, the court concluded that the admission of the child's out-of-court statements did not violate Price's right of confrontation. Price, 158 Wn.2d at 650. The court held that "when a witness is asked questions about the events at issue and about his or her prior statements, but answers that he or she is unable to remember the charged events or the prior statements, this provides the defendant sufficient opportunity for cross-examination to satisfy the confrontation clause." Price, 158 Wn.2d at 650. The Price court noted that in Rohrich, "the witness was on the stand, but the prosecutor did not ask *any* questions relating to the alleged events or the prior statements." Price 158 Wn.2d at 647-48. But unlike the circumstances in Rohrich, there was no effort in Price to shield the child from responding to the questions. Price, 158 Wn.2d at 648.

When a prosecutor shields the child from difficult questions, the examination "does not provide for adequate testimony under the confrontation clause." Grasso, 151 Wn.2d at 16. In that case, the prosecutor instructed the child witness that she could answer direct examination questions with "'I don't want to talk about it.'" Grasso, 151 Wn.2d at 9. The petitioner in Grasso was denied relief only because the child witness—R.G., the petitioner's daughter—did not answer all direct questions with the supplied phrase. The prosecutor asked her "whether anyone had ever touched her privates in a way she did not like," "whether she was telling the truth when she told the doctor about her dad," and what happened during her meetings with a child interviewer and a nurse. Grasso, 151 Wn.2d at 9. R.G. affirmed that she told the truth and answered, "I

can't remember" to the other questions. The <u>Grasso</u> plurality held that R.G.'s answer, "I can't remember," when asked about the charged events and her meetings with the interviewer and the nurse, was "a constitutionally acceptable response." <u>Grasso</u>, 151 Wn.2d at 17. The direct examination "made the jury sufficiently aware of R.G.'s hearsay statements . . . such that nothing prevented defense counsel from cross-examining R.G. about the truth of these statements or her lack of memory of the details." <u>Grasso</u>, 151 Wn.2d at 18.

Here, the prosecutor did not directly ask N whether Kinzle or anyone else touched her private parts. He did not ask whether she ever told interviewers that Kinzle or anyone else touched her private parts. The prosecutor's questions were indirect (whether she knew the names of her dad's friends or saw any of them in court) and innocuous (where lotions were stored and how furniture was arranged).

The State contends the record shows N's inability to recall the incident or remember making her prior statements. That is not so. N had no difficulty describing where the lotion was stored and how the furniture was arranged. It is impossible to infer that she did not recall Kinzle putting lotion on her private parts or making a prior statement that he did because she was not asked. The prosecutor shielded N from having to answer those difficult questions. There is no meaningful distinction between the situation here and that presented in <u>Rohrich</u>.

It is clear under <u>Price</u> and <u>Grasso</u> that a witness who says "I don't remember" when directly questioned about the alleged criminal act or prior

8

statements concerning it has said enough to satisfy the confrontation clause's preference for live testimony. In that circumstance, the defendant will have a "full and fair opportunity to expose the memory lapse through cross-examination, thereby calling attention to the reasons for giving scant weight to the witness's testimony." Price, 158 Wn.2d at 649. The jurors then have the opportunity to evaluate whether they believe the child forgot or whether she was evading for some other reason. Price, 158 Wn.2d at 649. But when a witness is not directly questioned about the alleged criminal act or prior statement, the cross-examiner has nothing to confront.

That is what happened here. Kinzle was caught in a "constitutionally impermissible Catch-22 of calling the child for direct or waiving his confrontation rights." Clark, 139 Wn.2d at 161. The conviction involving N must therefore be reversed.

## JURY INSTRUCTIONS

Kinzle challenges the reasonable doubt instruction given at his trial. The court used WPIC 4.01 with the following optional language: "If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 4.01, at 18 (3d ed. Supp. 2011). The Supreme Court has approved this instruction. State v. Bennett, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007). We reject Kinzle's argument that the optional language impermissibly suggests that the jury's job is to "search" for the truth.

9

The phrase "abiding belief in the truth of the charge" merely elaborates on what it means to be "satisfied beyond a reasonable doubt."

Kinzle also assigns error to the instruction that stated, "If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty." Kinzle argues that the instruction misstates the jury's role and impermissibly directs a guilty verdict. This court recently rejected these arguments in State v. Moore, __ Wn. App. __, 318 P.3d 296 (2014), review denied, No. 90051-5 (Wash. June 4, 2014). We adhere to that decision.

CONDITIONS OF COMMUNITY CUSTODY

Kinzle challenges four conditions of community custody included in his sentence.

Condition 7 orders Kinzle to refrain from possessing sexually explicit material or frequenting establishments selling sexually explicit materials. The State concedes that this condition must be stricken because no evidence suggested that such materials were related to or contributed to his crime. See State v. O'Cain, 144 Wn. App. 772, 184 P.3d 1262 (2008). We agree and accept the concession.

Condition 10 orders Kinzle not to "date women nor form relationships with families who have minor children, as directed by the supervising Community Corrections Officer." Kinzle argues that this condition is overbroad, vague, and unnecessary. We disagree. The sentencing court has discretion to order an offender to refrain from "direct or indirect contact with the victim of the crime or a

specified class of individuals." RCW 9.94A.703(3)(b). Because Kinzle's crime involved children with whom he came into contact through a social relationship with their parents, condition 10 is reasonably crime-related and necessary to protect the public. See, e.g., State v. Autrey, 136 Wn. App. 460, 468, 150 P.3d 580 (2006) (condition requiring prior approval of adult sexual conduct was reasonably related to sex crimes involving children "because potential romantic partners may be responsible for the safety of live-in or visiting minors").

Condition 13 required Kinzle to hold employment "only in a position where you always receive direct supervision." Kinzle claims the condition is unconstitutionally vague and overbroad because it requires "impossible" "around-the-clock monitoring during work." But Kinzle fails to argue or establish that his challenge to this condition is ripe for review. See State v. Bahl, 164 Wn.2d 739, 751, 193 P.3d 678 (2008); State v. Valencia, 169 Wn.2d 782, 789, 239 P.3d 1059 (2010).

There were also conditions pertaining to alcohol and polygraph testing. The court had authority to prohibit Kinzle from consuming alcohol regardless of whether alcohol was related to the crime. RCW 9.94A.703(3)(e). And a trial court has authority to impose polygraph testing to monitor compliance with community custody conditions. State v. Riles, 135 Wn.2d 326, 340, 957 P.2d 655 (1998), abrogated on other grounds by Valencia, 169 Wn.2d 782. But Kinzle was also required to participate in a chemical dependency evaluation. Kinzle claims the court erred in imposing this condition without first finding that he has a chemical dependency that contributed to the offense. We agree. RCW

9.94A.607(1); State v. Warnock, 174 Wn. App. 608, 612, 299 P.3d 1173 (2013).

Evidence at trial suggested that Kinzle was drinking alcohol shortly before the

charged incidents. But here, as in Warnock, there is no evidence that a

substance other than alcohol contributed to Kinzle's offense. We remand with

directions to amend the judgment and sentence to impose evaluation and

recommended treatment only for alcohol. Warnock, 174 Wn. App. at 614.

STATEMENT OF ADDITIONAL GROUNDS

Pursuant to RAP 10.10, Kinzle raises several additional grounds for

review. He alleges conflicts of interest with two appointed attorneys, malicious

prosecution, continuances without his agreement, deprivation of information

appropriate to his mental disabilities, and contaminated evidence. Because

these allegations rest on matters that are outside the record, they cannot be

considered on direct appeal. State v. McFarland, 127 Wn.2d 322, 337-38, 899

P.2d 1251 (1995).

Kinzle challenges the admission of testimony by Skomski and Leptich.

His arguments appear to be directed to the weight of the testimony rather than its

admissibility.

Kinzle's attempt to raise an Eighth Amendment challenge to his sentence

will not be considered because it is so devoid of meaningful argument on a

complex constitutional issue that "it does not inform the court of the nature and

occurrence of alleged errors." RAP 10.10(c).

Kinzle challenges additional conditions of community custody as not being

related to his crime. Condition 12 requires him to notify his employer of the

conviction; condition 19 requires him to maintain full time employment; and condition 29 requires approval of living arrangements. These conditions are authorized by statute "as part of any term of community custody" and need not be crime-related. RCW 9.94A.703(2)(b); RCW 9.94A.703(2)(e).

Kinzle challenges the imposition of two fees required by statute. His challenge is meritless because these fees are mandatory irrespective of the defendant's ability to pay.

Kinzle's conviction for child molestation involving N is reversed. His judgment and sentence is remanded for correction of the conditions of community custody consistent with this opinion.

Becker, J.

WE CONCUR:

Verellen, ACJ

Dwyer, J.

13