# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                              )
            Respondent, )
                              )
            v. )
                              )
ALVARO BALDERAS-LOPEZ, )
a.k.a. ALVARO BALDERRAS-LOPEZ, )
                              )
            Appellant. )
                              )
_____ )

DIVISION ONE

No. 73112-2-I

UNPUBLISHED OPINION

FILED: August 8, 2016

DWYER, J. — Following a jury trial, Alvaro Balderas-Lopez was convicted of one count of rape in the second degree.[1] On appeal, Balderas-Lopez contends that (1) WPIC 4.01[2]—the instruction that informed the jury on the concept of reasonable doubt—is unconstitutional, (2) that the trial court erred by not making an individualized inquiry into his ability to pay prior to imposing certain discretionary legal financial obligations (LFOs), (3) that his counsel provided constitutionally ineffective assistance by not objecting to the imposition of the discretionary LFOs, and (4) that the trial court erred when it imposed certain community custody conditions. Because of errors in the imposition of

---

[1] RCW 9A.44.050.
[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01 (3d ed. 2008) (WPIC).

several community custody conditions, we remand with instructions to amend the judgment and sentence. In all other respects, we affirm.

I

Sonia Cortes, her adult daughter Jhoanna Recinos-Cortes, and one of Jhoanna's friends went to a casino. They were later joined by Balderas-Lopez.

Later, the four of them decided to leave the casino and go to Cortes's house in Lynden. Recino-Cortes drove Cortes and the friend to the house. Balderas-Lopez followed in his own vehicle.

Upon arrival, the four of them went inside. Once inside, they went to Cortes's bedroom and sat on a floor mattress.

At about 6 a.m., Recino-Cortes "told everybody I'm falling asleep, I'm very tired, and that's what I did." At the time, Recino-Cortes was wearing yoga pants and underwear. Recino-Cortes was laying on top of the mattress, "in the corner," in a "fetal position" with a blanket covering her.

Shortly thereafter, Cortes, the friend, and Balderas-Lopez also decided to go to sleep. All three of them reclined on the mattress with Recino-Cortes.

After sleeping for several hours, Recino-Cortes "woke up, my head was banging on the wall . . . and I felt my head and I realized he was inside of me." Balderas-Lopez was "penetrating" her vagina with "his penis." At the time, Recino-Cortes was "in a fetal position facing the wall" with her "back [ ] towards him." Balderas-Lopez was "[b]ehind [her]." Both Recino-Cortes's underwear and her yoga pants were lowered to her knees.

"[N]ot very long" after Balderas-Lopez penetrated her, Recino-Cortes "got up and [ ] went crazy." She remembered that "I would scream -- I got up, pulled up my pants and he was doing the same thing and I told him, 'Why are you doing this? Why did you do this?' And I started hitting him and going at him." Balderas-Lopez responded, "I'm sorry. I thought I was somewhere else. I thought you were somebody else." Recino-Cortes then said, "No. No. It's not right," and told Balderas-Lopez that she was going to call the police. Balderas-Lopez fled the scene.[3]

Thereafter, Recino-Cortes called 911. Later that same day, Balderas-Lopez turned himself into the police.

The State charged Balderas-Lopez with one count of rape in the second degree. The jury found him guilty as charged.

Balderas-Lopez was sentenced to an indeterminate term of imprisonment, ranging from a minimum of 102 months of confinement to a maximum of life. Additionally, the trial court imposed a lifetime term of community custody with conditions and LFOs totaling $1,650.00.

Balderas-Lopez now appeals.

II

The trial court instructed the jury on reasonable doubt consistent with WPIC 4.01. Balderas-Lopez contends the instruction is unconstitutional because

---

[3] Balderas-Lopez's testimony differs on this point. He testified that he ended up outside of the house after Recino-Cortes was "hitting me and pushed the door open, [and] closed the door behind me."

it misstates the burden of proof and undermines the presumption of innocence.[4] The trial court did not err.

In State v. Bennett, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007), our Supreme Court mandated that the challenged instruction be given in all cases. The propriety of this instruction was reaffirmed in State v. Kalebaugh, 183 Wn.2d 578, 585-86, 355 P.3d 253 (2015). We have recognized this controlling authority. State v. Lizarraga, 191 Wn. App. 530, 364 P.3d 810 (2015), review denied, 185 Wn.2d 1022 (2016). The trial court did not err by doing the same.

III

Balderas-Lopez next contends that the trial court erred by imposing discretionary LFOs as part of his sentence.[5] He claims that the record does not support the factual finding that he has the ability to pay the amount ordered. His contention cannot be resolved by resort to the record.

Here, the discretionary LFOs that the trial court imposed were a $100 crime lab fee and a $250 jury demand fee.[6] See Former RCW 43.43.690(1) (1992) amended by LAWS OF 2015, ch. 265, § 30; RCW 36.18.016(3)(b). At sentencing, Balderas-Lopez's counsel did not object to the imposition of these LFOs.

---

[4] The challenged instruction provides, in pertinent part, that "[a] reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence."

[5] The State argues that Balderas-Lopez's claim of error is not yet ripe for review because the time to challenge the imposition of such fees is at the time of enforcement, not the time of imposition. Whether to address the claim of error is within our discretion. State v. Blazina, 182 Wn.2d 827, 832, 344 P.3d 680 (2015).

[6] Balderas-Lopez does not challenge the remaining assessments that were imposed.

As to the $100 crime lab fee, the relevant statute required Balderas-Lopez to make a "verified petition" to the trial court to facilitate an inquiry into his ability to pay. Former RCW 43.43.690(1). "Upon a verified petition by the person assessed the fee, the court may suspend payment of all or part of the fee if it finds that the person does not have the ability to pay the fee." Former RCW 43.43.690(1). Notwithstanding his statutory obligation to do so (in order to avoid the imposition of the assessment), Balderas-Lopez filed no such petition. Thus, he forfeited any claim of error.

As to the $250 jury demand fee, relevant statutes permit the trial court to order payment in such an amount after a defendant has been convicted of a criminal offense by a twelve-person jury. See RCW 36.18.016(3)(b); RCW 10.46.190. Balderas-Lopez's counsel did not object to the imposition of this fee. We cannot determine from the record how the trial court would have ruled on such an objection. Thus, Balderas-Lopez does not establish that a "manifest" error occurred.[7] RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007) ("It is this showing of actual prejudice that makes the error 'manifest.'").

Accordingly, we affirm the imposition of both fees.

IV

Balderas-Lopez next asserts that he was deprived of the effective assistance of counsel. This is so, he asserts, because his counsel did not object

---

[7] Balderas-Lopez does not assert that the trial court neglected to make the necessary factual findings. Rather, he claims that the findings were mere "boilerplate" and did not follow the necessary inquiry. An inquiry, we note, that he did not request.

to the imposition of the discretionary LFOs.

"In order to succeed in [an ineffective assistance of counsel] claim, the defendant must show both that the attorney's performance was deficient and that the defendant was prejudiced by that deficient performance." State v. Borsheim, 140 Wn. App. 357, 376, 165 P.3d 417 (2007) (citing Strickland v. Washington, 466 U.S. 668, 688-93, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "Deficient performance is that which falls below an objective standard of reasonableness." State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). "Prejudice occurs where there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different." Weaville, 162 Wn. App. at 823 (citing State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)).

Based on the record before us, we cannot determine whether the sentencing court would have imposed the fees in the face of a proper petition or objection by the defendant. See State v. Stoddard, 192 Wn. App. 222, 366 P.3d 474 (2016) (no manifest error in imposition of DNA fee). If the facts do not support such a petition or objection, then counsel did not act below the standard of care in refraining from objecting. Similarly, if the facts do not support such a petition or objection, Balderas-Lopez cannot show prejudice. Moreover, because Balderas-Lopez has a statutory right to a remission hearing, he cannot show prejudice. His claim of ineffective assistance fails.

V

Balderas-Lopez next contends that the community custody condition requiring him to submit to a plethysmograph assessment at the direction of the department of corrections and his therapist was improperly imposed.[8] The State concedes that "the condition should be modified to state that the community corrections officer['s] and therapist[']s authority is limited to order plethysmograph testing only for purposes of sexual deviancy evaluation/treatment and not for monitoring purposes. See State v. Land, 172 Wn. App. 593, 295 P.2d 782 (2013)." Br. of Resp't at 12-13. We accept the State's concession. On remand, the trial court shall modify the sentence accordingly.

VI

Balderas-Lopez next contends that the community custody condition requiring that he not date or engage in sexual activity with others without prior approval of his community custody officer or therapist was improperly imposed.[9] He claims that this condition is neither crime-related nor constitutional because it infringes on his right to freedom of association. We disagree with both contentions.

The trial court "has discretion to order an offender to refrain from 'direct or indirect contact with the victim of the crime or a specified class of individuals.'"

---

[8] The trial court ordered that Balderas-Lopez "[s]ubmit to [a] polygraph and/or plethysmograph assessment at [his] own expense as directed by Department of Corrections *and* therapist, but limited to topics related to monitoring compliance with crime-related sentencing conditions." (Emphasis added.) Balderas-Lopez wrongfully argues that DOC could have ordered this on its own.

[9] The trial court ordered that Balderas-Lopez not "date people or engage in sexual activity with others without prior approval of your Community Corrections Officer &/or therapist."

State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (quoting RCW 9.94A.703(3)(b)), review denied, 181 Wn.2d 1019 (2014). Here, Balderas-Lopez was convicted of raping a woman in her mother's home. He raped her while she slept. Given these facts, a condition requiring preapproval of any dating or sexual relationship is a proper crime-related condition.

For the first time on appeal, Balderas-Lopez contends that this condition violates his First Amendment right of association. When necessary to accomplish the needs of public order, sentencing conditions may properly restrict that right. State v. Riles, 135 Wn.2d 326, 347, 957 P.2d 655 (1998) *abrogated on other grounds by* State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010); State v. Riley, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993); State v. Ancira, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001). There was no error.

## VII

Balderas-Lopez next contends that the community custody condition requiring that he not withhold information or keep secrets from his treatment provider or community corrections officer was improperly imposed.[10] Additionally, he contends that the community custody condition requiring that he not use or possess sexually explicit material was improperly imposed.[11] The State concedes error with regard to both of these conditions and concedes that they should each be stricken on remand. We accept the State's concessions.

---

[10] The trial court ordered that Balderas-Lopez "not withhold information or keep secrets from [his] treatment provider or Community Corrections Officer."

[11] The trial court ordered that Balderas-Lopez not "use or possess sexually explicit material in any form as described by the treatment provider and/or Community Corrections Officer, including internet use and possession."

Affirmed in part. Reversed and remanded to the trial court with instructions to amend the judgment and sentence in accordance with this opinion.[12]

We concur:

---

[12] Balderas-Lopez is being granted substantial relief on appeal. Thus, he shall not be responsible for costs on appeal.