FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 SEP 11 AM 10: 37

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| IN RE PERSONAL RESTRAINT PETITION OF | No. 74670-7-I |
| | DIVISION ONE |
| JEFFREY KINZLE, | UNPUBLISHED OPINION |
| Petitioner. | FILED: <u>September 11, 2017</u> |

SPEARMAN, J. — When a claim has been raised and rejected on direct appeal, a petitioner may not renew the claim in a personal restraint petition. Jeffrey Kinzle contends he received ineffective assistance of counsel. He asserts that, despite an irreconcilable breakdown in the attorney-client relationship, his attorney failed to assist his efforts to obtain substitute counsel. But because we already rejected the claim that the attorney-client relationship was irreconcilably broken, Kinzle may not renew the claim here.

Kinzle also contends that his attorney deficiently failed to investigate his mental health and this deficiency caused him to reject a plea offer. To prevail on this claim, Kinzle must show a reasonable probability that, but for the alleged deficiency, he would have accepted the plea. Kinzle fails to make this showing. The personal restraint petition is denied.

## FACTS

Kinzle has a history of mental illness. When he was booked into the Snohomish County Jail (SCJ) in March 2011, he informed jail staff that he was mentally ill and took a number of medications. The jail did not immediately obtain these medications or begin treating Kinzle.

Kinzle was charged with failure to register as a sex offender, indecent liberties, and one count of child molestation. In early April, the Office of Public Defense appointed Cassie Trueblood to represent Kinzle. It appears that Trueblood did not meet with Kinzle for at least two weeks. During this period before their first meeting, Kinzle twice sent kites, or written requests, to the public defender's office asking for a new attorney. App. 37-38. He asserted that Trueblood "refused to do her job." Appendix (App.) 37.

On April 7, the State proposed a plea bargain that encompassed all of the charges. The record contains no evidence concerning Kinzle's response or his discussions with Trueblood about the offer. Kinzle later indicated, however, that he refused the plea offer against Trueblood's advice.

Near the end of April, Kinzle told jail staff he was experiencing mood swings and asked to resume Lithium treatment.[1] A mental health evaluation was conducted. The mental health professional documented Kinzle's report of rapid cycling between mania and depression. She evaluated Kinzle as having organized thought processes, reality based thought content, no sensory

---

[1] Kinzle also asked the jail staff to obtain his previous mental health records. The jail obtained records from September 2009-January 2010. During that time period, Kinzle's only medication was Dexedrine which reportedly improved his ability to focus.

2

disturbance, and normal intellectual functioning. Kinzle resumed Lithium treatment on May 1.[2]

In June, the State amended the information to add a second count of child molestation. A short time later, Kinzle pleaded guilty to failure to register. At the end of June, the State proposed a second plea offer. Kinzle rejected the offer against Trueblood's advice.

On June 29 and 30, Kinzle addressed five kites to Trueblood. He asked for copies of discovery as well as laws and legal definitions related to his charges. Kinzle also sent a kite to the director of public defense requesting a new attorney. He asserted that Trueblood was doing more to accommodate the prosecutor than to defend him and alleged that she would not fight for him at trial. Id. Kinzle also alleged that Trueblood refused to pursue all of the investigations he requested.

In July, after negotiation with Trueblood, the State renewed its plea offer. Kinzle indicated that he would accept the offer and a hearing was set. Prior to the hearing, Kinzle addressed seven kites to Trueblood asking her to investigate various defense theories.

At the hearing, Kinzle rejected the plea offer and also moved to substitute counsel. He asserted that Trueblood had been trying to "strong arm" him into accepting a plea deal. App. 56. Kinzle explained that, as he was facing a life sentence, he wanted to fight the charges, not plead to them. He also alleged that Trueblood refused his requests to investigate additional evidence, she had not

---

[2] Records indicate, however, that Kinzle did not always receive the medication as prescribed over the next few months.

given him copies of the laws and legal definitions he requested, and he did not believe he would get a fair trial with her as his attorney.

Trueblood acknowledged there had been a breakdown in communication, especially in the past week. But she stated that she had done substantial investigation and believed she was competent to handle the case. Trueblood left the decision of whether to replace her to the court. The court continued the motion one week to allow Kinzle and Trueblood an opportunity to reestablish communication.

When the hearing resumed, Kinzle stated that he had spoken with Trueblood but he was still opposed to her approach concerning plea offers. The court found that the parties were communicating and Trueblood was investigating all of Kinzle's witnesses. The court denied Kinzle's motion to substitute counsel.

In August, inmates reported to SCJ corrections officers that Kinzle made threatening statements concerning Trueblood and other targets. When informed of these statements, the prosecutor was concerned that Kinzle's threats could provide Trueblood with a motive to want Kinzle to receive a lengthy sentence and could thus be a conflict of interest. The prosecutor raised his concerns in a motion to clarify the potential conflict of interest. At the hearing on the motion, Trueblood stated that she was prepared for trial, she was not afraid of Kinzle, and she felt confident representing him. The court did not issue a ruling but stated that "Ms. Trueblood believes she can adequately represent [Kinzle], and I've heard nothing to the contrary, and off you go." App. 68.

4

The court addressed Kinzle's representation again on October 31, the first day of the indecent liberties trial. During motions in limine, the court inquired about the prior motion concerning a conflict of interest and asked Trueblood to address the issue of representation. Trueblood stated that she was prepared for trial and did not see the need for new counsel. The court then addressed Kinzle:

> **The Court:** Let me just ask you, given that your attorney has represented that she is prepared to represent you today, she's not concerned about whatever you might have communicated at the jail to other people or whatever threats or whatever may have gone on. . . . So we're ready to go. If that meets with your approval.
> **Kinzle:** Yes, sir.
> **The Court:** O.K. . . . I don't see that there's anything carrying over today that would impact Ms. Trueblood's ability to represent Mr. Kinzle. He's indicated today that he's comfortable having Ms. Trueblood continue to represent him, so I don't perceive a conflict that would require. . . any change of attorney to be addressed at this time. . . .

App. 70.

Kinzle was convicted of indecent liberties. In a separate trial, he was also convicted of two counts of child molestation. We affirmed his indecent liberties conviction in State v. Kinzle, 174 Wn. App. 1073, 2013 WL 1960159 (2013) (Kinzle I). In State v. Kinzle, 181 Wn. App. 774, 326 P.3d 870 (2014) (Kinzle II), we affirmed one count of child molestation, reversed one count, and remanded for correction of improper community custody conditions.

## DISCUSSION

In this personal restraint petition, Kinzle asks us to vacate his convictions and order the Snohomish County Prosecutor to reinstate the April 2011 plea offer. Kinzle contends that he received ineffective assistance of counsel in violation of the Sixth Amendment. To prevail in a claim of ineffective assistance

5

of counsel, a petitioner must show that (1) his attorney's representation was deficient and (2) the deficiency resulted in prejudice. State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 1251 (1995) (applying Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Kinzle asserts that Trueblood was deficient because, despite a complete breakdown in the attorney-client relationship, she failed to assist Kinzle in his efforts to obtain new counsel. Kinzle also contends that Trueblood was deficient in failing to investigate his mental health. He asserts that Trueblood was aware of his history of mental illness. In addition, he argues that his behavior and interaction with Trueblood should have alerted her that he was currently mentally ill. Kinzle contends he was prejudiced by these alleged deficiencies because as a result he rejected a favorable plea offer that he otherwise would have accepted.

As a threshold matter, the State asserts that Kinzle's claims were rejected on the merits in Kinzle I and may not be reconsidered here. A personal restraint petitioner may generally not renew an issue that was raised and rejected on direct appeal. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 720, 16 P.3d 1 (2001) (Stenson II). A petitioner may not sidestep this rule by recasting an issue under a different name or legal theory. Id. An exception to the general rule exists where relitigation is necessary in the interest of justice, as when there has been an intervening material change in law. Id.

In Stenson II, the Supreme Court considered whether a petitioner's claim was barred because it had been considered on direct appeal. Id. at 723. In the direct appeal, Stenson asserted that the trial court erred in denying his motion to

6

substitute counsel. State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997) (Stenson I). The essential question before the court was whether "counsel and defendant [were] so at odds as to prevent presentation of an adequate defense." Id. at 734. The court held that Stenson failed to show the necessity for new counsel and rejected his claim. Id. at 737.

In the later personal restraint petition, Stenson asserted that he received ineffective assistance of counsel due to an irreconcilable conflict. Stenson II, 142 Wn.2d at 722-24. The Stenson II court held that this issue had been addressed on direct appeal. Id. at 723-24. But because an intervening change in law required a different legal analysis, the court considered the issue in the interest of justice. Id. at 724.

In this case, Kinzle asserted on direct appeal that the trial court erred in denying his motion to substitute counsel. Kinzle I, 174 Wn. App. at *2. Kinzle contended that he and Trueblood had "'an ongoing, intractable conflict' that 'amounted to a total breakdown in communications.'" Id. We rejected the claim because Kinzle failed to show that the attorney-client relationship had collapsed to such a degree that it violated Kinzle's right to an adequate defense. Id. at *2-3.

In this petition, Kinzle asserts that his relationship with Trueblood "became irreconcilably broken." Personal Restraint Petition (PRP) at 6. He claims that he received ineffective assistance of counsel because, despite this complete breakdown in the relationship, Trueblood failed to withdraw, join his motion to substitute counsel, or fully inform the court of the state of the attorney-client relationship. But we considered and rejected the claim that the attorney-client

relationship was irreconcilably broken in Kinzle I. Kinzle may not raise the issue again here.

Kinzle attempts to escape this result by arguing that his claim in this petition has a different focus than his claim on direct appeal. He relies on In re Pers. Restraint Petition of Khan, 184 Wn.2d 679, 363 P.3d 577 (2015). In that case, the petitioner asserted on direct appeal that he received ineffective assistance of counsel because his attorney failed to object to alleged trial errors. Id. at 688. In a later personal restraint petition, he asserted that he received ineffective assistance of counsel because his attorney failed to provide him with an interpreter. Id. The Khan court held that the interpreter issue was a new claim that had not been considered on direct appeal. Id. at 689.

Khan is of no help to Kinzle. In that case, the petitioner raised an independent claim of ineffective assistance of counsel, unrelated to the claim considered on direct appeal. But in this case, Kinzle's claim requires consideration of the same issue addressed on direct appeal.[3]

Kinzle also argued, in Kinzle I, that the trial court erred in failing to order a competency hearing. Kinzle I, 174 Wn. App. at *2. He asserted that the record gave substantial evidence that his competency was "questionable." Id. at *4. We disagreed. Id. We held that there was no evidence that Kinzle was unable to

---

[3] Kinzle also asserts that this petition relies on evidence that was not presented to the trial court. This evidence consists of Kinzle's kites, his medical records, his 2015 declaration stating that he had difficulty working with his attorney, and the declarations of his experts. But because the nature of Kinzle's relationship with Trueblood was litigated on direct appeal, the new evidence is only relevant if it goes to whether the interests of justice require relitigation of the issue. Stenson II, 142 Wn.2d at 719. Kinzle fails to show that it does.

8

understand the proceedings or assist in his own defense. Id. "In fact," we noted, "when Kinzle addressed the court, the opposite appeared true." Id.

In this personal restraint petition, Kinzle asserts that Trueblood was deficient in failing to investigate his mental health despite numerous facts that should have alerted her that he was mentally ill. The State contends that this claim simply recasts the issue of whether Kinzle was competent to assist in his own defense. Kinzle disputes that his competency is at issue here. He contends that, regardless of whether he was incompetent, his mental illness was at the root of his problems with counsel and his refusal of the plea offer.

Kinzle's claim here is closely related to the competency issue considered in Kinzle I. In the direct appeal, however, we examined whether the evidence before the trial court indicated that Kinzle was incompetent. Here, the question is whether the facts available to Trueblood created an obligation that she investigate Kinzle's mental health. Because that issue was not addressed on direct appeal, we consider it here.

We first consider whether Kinzle has established prejudice. To obtain relief in a personal restraint petition, a petitioner must show that he was actually prejudiced by each claimed constitutional error. In re Pers. Restraint Petition of Rice, 118 Wn.2d 876, 884, 828 P.2d 1086 (1992). A petitioner shows that he was prejudiced by ineffective assistance of counsel by establishing that, but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. Strickland, 466 U.S. at 687. Where ineffective assistance allegedly causes a defendant to reject a plea offer, a

defendant must show a reasonable probability that, but for the ineffective advice of counsel, he would have accepted the plea. Lafler v. Cooper, 566 U.S. 156, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012).

Kinzle asserts that he "would have accepted the original plea offer, had he--with proper medication--been in a mental state to appreciate his legal situation and had communications between his counsel and him not completely broken down." PRP at 34. He relies on his own 2015 declaration, in which he states that his mental illness impeded his ability to understand Trueblood and that if he had "been mentally stable and been able to trust Ms. Trueblood's advice," he would have accepted the offer.[4] App. 14. Kinzle also relies on the declaration of his expert, psychologist Alan Breen, who opined that the initial dose of Lithium prescribed was unlikely to have been optimal and that Kinzle likely continued to have symptoms of mania even after he began treatment. And Kinzle argues that, given the strength of the State's case, any rational defendant would have accepted the plea offer.

The link that Kinzle posits between Trueblood's alleged deficiency and his refusal of the plea offer is speculative and tenuous. His argument assumes that, had Trueblood investigated his mental health, she would have ordered a mental health evaluation. It further assumes that the results of the new evaluation would

---

[4] Kinzle asserts that a petitioner's own statement suffices to establish that he would have accepted the plea offer but for his attorney's deficient performance. He relies on the Sixth Circuit decision underlying Lafler. The case is distinguishable. In Lafler, defense counsel provided erroneous legal information and, based on that information, advised the defendant to reject a plea offer. Cooper v. Lafler, 376 Fed. App'x. 563, 570 (6th Cir. 2010). In a habeas corpus petition following his conviction, the defendant argued that he would have accepted the plea offer but for his attorney's erroneous advice. Id. at 571. His trial attorney confirmed the statement and the circumstances lent credence to the claim. Id. at 572.

have been different from those of the mental health evaluation administered on April 26. Kinzle's argument further assumes that, in response to this hypothetical evaluation, the SCJ would have modified Kinzle's treatment. Meanwhile, Trueblood would have continued the cases and, at some point, the treatment would have altered Kinzle's mental state to such a degree that he would have accepted Trueblood's advice to accept the plea offer despite his professed desire to make the State prove the case against him. Kinzle points to no case in which a defendant established prejudice through a similarly tenuous connection. He fails to establish a reasonable probability that, but for the allegedly deficient representation, he would have accepted the plea. Kinzle fails to establish that he was prejudiced by Trueblood's performance.[5]

The petition is denied.

_Spearman, J._

WE CONCUR:

_Mann_,                     _Trickey, A.C.J._

---

[5] In light of our disposition, we do not consider Kinzle's claim that Trueblood's performance was deficient. In re Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). ("We need not consider both prongs of Strickland (deficient performance and prejudice) if a petitioner fails on one.") (quoting Strickland, 466 U.S. at 697).