# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59346-7-II |
| Respondent, | |
| v. | |
| JOAQUIM DAMALL ZYTAVION FRYSON, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—Joaquim Damall Zytavion Fryson appeals seven community custody conditions imposed after he pleaded guilty to attempted first degree robbery. Fryson argues that the trial court erred by 1) imposing six "financial gain" community custody conditions that are not sufficiently related to his crime of attempted robbery and 2) ordering polygraph examinations without any limiting language. The State concedes that all but one of the challenged "financial gain" community custody conditions are not crime related. The State also concedes that on remand, the trial court should explicitly limit the scope of polygraph testing to monitoring compliance with the valid community custody conditions.

We accept the State's concessions. And we hold that the one disputed community custody condition is sufficiently crime related. Therefore, we remand for the trial court to strike the five conceded community custody conditions and explicitly limit the scope of polygraph testing to monitoring compliance with Fryson's community custody conditions.

FACTS

Fryson tried to rob a woman at gunpoint. Fryson approached the woman, a clerk at a grocery store, in the parking lot of the store, and put a gun to her head and demanded that she give him money. Fryson pleaded guilty to first degree attempted robbery. At sentencing, the trial court imposed a sentence of 84 months and stated that it was imposing "[s]tandard conditions" of community custody. Verbatim Rep. of Proc. (Feb. 23, 2024) at 90.

Fryson's judgment and sentence contained preprinted lists of categories of community custody conditions, with boxes next to each category that the trial court could check to mark that it was imposing those conditions. The list of "Standard" conditions included one requiring Fryson to "[w]ork only at [Department of Corrections]-approved education, employment, and/or community service." Clerk's Papers (CP) at 112.

The trial court also checked the box to impose a list of the following "Financial Gain" conditions:

> • Commit no thefts and possess no stolen property.
> • Have no checking account or possess any blank or partially blank checks.
> • [Do n]ot seek or maintain employment in a volunteer organization where Defendant has access to cash, checks, accounts receivable or payable, or books without prior written permission of the [community custody officer (CCO)] after notifying employer in writing of this conviction.
> • Use no names of persons other than the Defendant's true name on any document, written instrument, check, refund slip or similar written instrument.
> • Possess no identification in any other name other than Defendant's true name.
> • Possess no credit cards or access devices belonging to others or with false names.
> • Cause no articles to be refunded except with the written permission of CCO.
> • Polygraph tests as required by CCO.

*Id.*

2

No. 59346-7-II

Fryson appeals.

ANALYSIS

A.   FINANCIAL GAIN COMMUNITY CUSTODY CONDITIONS

Fryson argues that the trial court erred by imposing six of the "financial gain" community

custody conditions because the conditions are not crime related. Specifically, Fryson challenges

the following community custody conditions:

> "• Have no checking account or possess any blank or partially blank checks.
> • [Do n]ot seek or maintain employment in a volunteer organization where Defendant has access to cash, checks, accounts receivable or payable, or books without prior written permission of the CCO after notifying employer in writing of this conviction.
> • Use no names of persons other than the Defendant's true name on any document, written instrument, check, refund slip or similar written instrument.
> • Possess no identification in any other name other than Defendant's true name.
> • Possess no credit cards or access devices belonging to others or with false names.
> • Cause no articles to be refunded except with the written permission of CCO."

Appellant's Br. at 7 (quoting CP at 112). The State concedes that five of the challenged community

custody conditions are not crime-related and should be stricken. The parties dispute only whether

the condition barring Fryson from seeking or maintaining employment in a volunteer organization

where he "has access to cash, checks, accounts receivable or payable, or books without prior

written permission of the CCO after notifying employer in writing of this conviction" is crime-

related. Appellant's Br. at 7; Br. of Resp't at 7.

We review community custody conditions for abuse of discretion. *State v. Wallmuller*, 194

Wn.2d 234, 238, 449 P.3d 619 (2019). "A trial court necessarily abuses its discretion if it imposes

3

an unconstitutional community custody condition" or if the community custody condition is manifestly unreasonable. *Id*. *See also State v. Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).

A trial court may order an offender to "[c]omply with any crime-related prohibitions." RCW 9.94A.703(3)(f).[1] "A crime-related prohibition must directly relate to the circumstances of the crime for which the offender was convicted." *State v. Padilla*, 190 Wn.2d 672, 682, 416 P.3d 712 (2018). We review the factual basis for a community custody condition for substantial evidence to determine if a condition is appropriately crime related. *Id*. at 683.

Here, the record shows that Fryson's crime was an attempt to rob someone at gunpoint— there is no evidence or allegation that he committed any form of identity theft, check fraud, forgery, or false product return. Accordingly, we accept the State's concession that five of the challenged "financial gain" community custody conditions are not crime related.

However, for the community custody condition regarding seeking or maintaining employment in a volunteer organization where Fryson may have access to "cash, checks, accounts receivable or payable, or books," the State argues that the community custody condition was statutorily authorized by RCW 9.94A.703(2)(b) which, "[u]nless waived by the court," requires an offender to "[w]ork at department-approved education, employment, or community restitution, or any combination thereof." Br. of Resp't at 7. The statute authorizes the imposition of this condition " 'as part of any term of community custody' and need not be crime-related." *State v. Kinzle*, 181 Wn. App. 774, 787, 326 P.3d 870 (2014) (quoting RCW 9.94A.703(2)). Fryson,

---

[1] RCW 9.94A.703 was amended in 2024. We cite to the current version because this amendment does not impact our analysis. *See* LAWS OF 2024, ch. 118, § 2.

however, contends that this condition falls under RCW 9.94A.703(3)(f), which allows the trial court to impose discretionary "crime-related prohibitions."

Here, in the portion of the judgment and sentence imposing "Standard" conditions, the trial court did impose the exact condition authorized by RCW 9.94A.703(2)(b). CP at 112. But the community custody condition Fryson challenges appears in a portion titled "Financial Gain," which contains discretionary conditions purporting to be crime related under RCW 9.94A.703(3)(f). *Id.* This condition is more specific than merely requiring Fryson to work at department-approved education, employment, or community restitution, or any combination thereof. The challenged condition prohibits Fryson from seeking or maintaining employment in a volunteer organization where he "has access to cash, checks, accounts receivable or payable, or books" without notifying the employer of his conviction or securing permission from his CCO. *Id.*[2]

Whether we treat this condition as a waivable condition falling under RCW 9.94A.703(2)(b), or as a discretionary crime related condition under RCW 9.94A.703(3)(f), the trial court did not err or abuse its discretion in imposing this condition. Waivable conditions "shall"

---

[2] It is worth noting that the judgment and sentence in this case does not follow the suggested form published by the Washington Pattern Forms Committee, which has been "the central authority for standardized court forms in the State of Washington" since 1978. Washington Pattern Forms Committee, Washington Courts, https://www.courts.wa.gov/committee/index.cfm?fa=committee .home&committee_id=150 (last visited Feb. 25, 2025).

In the current suggested judgment and sentence form for felony offenses that are not sex crimes, which is available under the "Forms" tab on the Washington Courts website, the "Waivable" community custody conditions that fall under RCW 9.94A.703(2) are clearly separated from the "Discretionary" community custody conditions that fall under RCW 9.94A.703(3).Form CR 84.0400P, Felony Judgment and Sentence - Prison (Non-Sex Offender), at 7-8 (rev. June 2024), https://www.courts.wa.gov/forms/documents/CR84.0400_FJS_Prison_nonse xoffense_2024%2006.pdf. The judgment and sentence in this case did not differentiate between mandatory, waivable, and discretionary conditions, rendering it needlessly unclear.

be imposed "as part of any term of community custody" unless the court waives them, and these conditions need not be crime related. RCW 9.94A.703(2). But, even if viewed under RCW 9.94A.703(3)(f), this condition is plainly crime related. Fryson pleaded guilty to attempted first degree robbery after pointing a gun at the victim's head and demanding she give him money. If Fryson was prepared to commit a strike offense that carried a potential maximum sentence of life in prison to obtain cash from an off-duty store clerk, it is reasonable to believe that if he was entrusted with access to "cash, checks, accounts receivable or payable, or books" without CCO approval or the employer knowing of his offense, that Fryson would commit theft. *See* RCW 9.94A.030(32)(a); RCW 9A.56.200(2). Accordingly, there is a relationship between Fryson's crime of attempted first degree robbery and the community custody condition barring him from seeking or maintaining employment in a volunteer organization where he has access to cash and financial documents. *Padilla*, 190 Wn.2d at 683. Thus, there is substantial evidence that this challenged community custody condition is crime-related.

Because there is no evidence that the five conceded "financial gain" community custody conditions are crime related, the trial court abused its discretion by imposing those five community custody conditions. *Nguyen*, 191 Wn.2d at 678. We remand for the trial court to strike the five conceded "financial gain" community custody conditions. But we affirm the condition barring Fryson from seeking or maintaining employment in a volunteer organization where he has access to financial documents without permission from his CCO.

B.      POLYGRAPH TESTING

Fryson also argues that the community custody condition authorizing " '[p]olygraph tests as required by CCO' " is overly broad. Appellant's Br. at 11 (quoting CP at 112). He asserts that

"[t]rial courts have the authority to impose polygraph examinations as a community custody condition only if" the testing is limited to monitoring compliance with other conditions. *Id.* at 9. The State responds that the polygraph testing condition "is impliedly limited to enforcing the valid conditions of community custody," but "because the cause must be remanded anyway, the State agrees with Fryson that that limitation should be made explicit." Br. of Resp't at 9.

"Polygraph testing may be utilized to monitor compliance with the requirement of making reasonable progress in treatment or with other special conditions of community supervision" as long as the monitoring is narrowly tailored. *State v. Combs*, 102 Wn. App. 949, 952, 10 P.3d 1101 (2000); *State v. Olsen*, 189 Wn.2d 118, 130, 399 P.3d 1141 (2017). The language of a judgment and sentence, taken as a whole, may impliedly limit the scope of polygraph testing to only monitoring compliance with the defendant's community custody conditions while preventing the testing from being used "as a fishing expedition to discover evidence of other crimes, past or present." *Combs*, 102 Wn. App. at 953. And Division Three has stated that, "[w]hile not discouraging the use of preprinted sentencing forms," appellate courts "strongly encourage the parties to carefully tailor [preprinted forms] to conform to the particular nuances of each case." *Id.*

Here, under the category of "Financial Gain" community custody conditions, Fryson's judgment and sentence authorizes "[p]olygraph tests as required by CCO." CP at 112. But polygraph testing should be used only to monitory Fryson's compliance with valid community custody conditions, such as the requirements that he obey the no-contact order associated with his conviction and notify his CCO of any new arrests. *Olsen*, 189 Wn.2d at 130. The polygraph testing should not be used as a fishing expedition to uncover evidence of other crimes. *Combs*, 102 Wn. App. at 953.

No. 59346-7-II

Because we remand on other grounds, we direct the trial court to revise the polygraph testing condition on remand. The trial court should expressly limit the use of polygraph testing to monitor compliance with Fryson's community custody conditions.

CONCLUSION

We hold that the five conceded "financial gain" community custody conditions are not crime related. Accordingly, we remand for the trial court to strike the five conceded community custody conditions. But we affirm the condition barring Fryson from seeking or maintaining employment in a volunteer organization where he has access to financial documents without permission from his CCO. Also, on remand, the trial court should explicitly limit the scope of polygraph testing to monitoring compliance with Fryson's remaining community custody conditions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Cruser, C.J.

CRUSER, C.J.

I concur:

Glasgow, J.

GLASGOW, J.

8

LEE, J. (concurring/dissenting) — I agree with the majority that the five "financial gain" community custody conditions conceded by the State should be stricken. I also agree with the majority that the scope of the polygraph testing community custody condition should be limited in scope to monitoring compliance with valid community custody conditions.

However, I disagree with the majority that the "financial gain" community custody condition, clearly imposed under RCW 9.94A.703(3)(f), prohibiting Fryson from seeking or maintaining "employment in a volunteer organization where [Fryson] has access to cash, checks, accounts receivable or payable, or books" without the community custody officer's consent and notification of his conviction in writing to the employer is crime-related. Clerk's Papers (CP) at 112. Instead, I would hold that this challenged "financial gain" condition is required to be crime-related, is not crime-related, and should also be stricken on remand.

## FACTS

The record shows that the trial court imposed the "Standard" community condition requiring Fryson to "[w]ork only at [Department of Corrections]-approved education, employment[,] and/or community service." CP at 112. RCW 9.94A.703(2)[3] states that "[u]nless waived by the court, as part of any term of community custody, the court shall order" the offender to comply with this condition.

The record also shows that in the judgment and sentence, the trial court checked the box "Financial Gain," under which the following community custody conditions are listed:

- Commit no thefts and possess no stolen property.
- Have no checking account or possess any blank or partially blank checks.

---

[3] The legislature amended RCW 9.94A.703 in 2024. The amendments are not material to this case, so we cite to the current version of the statute.

- [Do n]ot seek or maintain employment in a volunteer organization where Defendant has access to cash, checks, accounts receivable or payable, or books without prior written permission of the [community custody officer (CCO)] after notifying employer in writing of this conviction.
- Use no names of persons other than the Defendant's true name on any document, written instrument, check, refund slip or similar written instrument.
- Possess no identification in any other name other than Defendant's true name.
- Possess no credit cards or access devices belonging to others or with false names.
- Cause no articles to be refunded except with the written permission of CCO.
- Polygraph tests as required by CCO.

CP at 112.

Fryson challenges the following six of these community custody conditions as not crime-related:

"• Have no checking account or possess any blank or partially blank checks.
- [Do n]ot seek or maintain employment in a volunteer organization where Defendant has access to cash, checks, accounts receivable or payable, or books without prior written permission of the CCO after notifying employer in writing of this conviction.
- Use no names of persons other than the Defendant's true name on any document, written instrument, check, refund slip or similar written instrument.
- Possess no identification in any other name other than Defendant's true name.
- Possess no credit cards or access devices belonging to others or with false names.
- Cause no articles to be refunded except with the written permission of CCO."

Br. of Appellant at 7 (quoting CP at 112).

The State concedes that five of those challenged community custody conditions are not crime-related and should be stricken from Fryson's judgment and sentence. However, the State contends that the community custody condition barring Fryson from seeking or maintaining employment in a volunteer organization where he "has access to cash, checks, accounts receivable or payable, or books without prior written permission of the CCO after notifying employer in writing of this conviction" is crime-related. Br. of Resp't at 7.

10

No. 59346-7-II

ANALYSIS

I agree with the majority that a trial court may order an offender to comply with crime-related prohibitions under RCW 9.94A.703(3)(f). Crime-related prohibitions must "directly relate to the circumstances of the crime for which the offender was convicted." *State v. Padilla*, 190 Wn.2d 672, 682, 416 P.3d 712 (2018). We review the factual basis for a community custody condition for substantial evidence to determine if a condition is appropriately crime-related. *Id.* at 683.

The majority asserts that the community custody condition prohibiting Fryson from seeking or maintaining employment in a volunteer organization where he "'has access to cash, checks, accounts receivable or payable, or books'" without notifying the employer of his conviction or having the community custody officer's permission is crime-related. Majority at 5 (quoting CP at 112). The majority's reasoning that this prohibition is crime-related is that:

> If Fryson was prepared to commit a strike offense that carried a potential maximum sentence of life in prison to obtain cash from an off-duty store clerk, it is reasonable to believe that if he was entrusted with access to "cash, checks, accounts receivable or payable, or books" without CCO approval or the employer knowing of his offense, that Fryson would commit theft. Accordingly, there is a relationship between Fryson's crime of attempted first degree robbery and the community custody condition barring him from seeking or maintaining employment in a volunteer organization where he has access to cash and financial documents.

Majority at 6 (citations omitted).

The majority's basis for finding the challenged community custody condition as being crime-related seems to rely on the notion of behavior in conformity with criminal tendencies—that if Fryson is willing to attempt to rob someone at gunpoint, then he "would commit theft." Majority at 6. That I cannot agree with. Moreover, the majority fails to explain how this community custody condition is crime-related, but the following community custody conditions

11

are not crime-related: that Fryson have no checking account or possess any blank or partially blank checks; not use names of persons other than his true name in any document, written instrument, check, refund slip or similar written instrument; not possess identification in any name other than his true name; not possess credit cards or access devices belonging to others or with false names; or not cause any articles to be refunded except with the community custody officer's permission. Therefore, I cannot agree with the majority.

Here, the record shows that Fryson's crime was an attempt to rob someone at gunpoint. There is simply no criminal relationship between Fryson's crime of attempted first degree robbery and the community custody condition barring him from seeking or maintaining employment in a volunteer organization where he has access to cash or financial documents. And the majority provides no reasonable explanation as to how the community custody condition barring Fryson from seeking or maintaining employment in a volunteer organization where he has access to cash or financial documents is any different in nature or scope to the other conditions the majority has agreed are not crime-related (e.g., not having a checking account or possess any blank or partially blank checks, not possessing any credit cards or access devices belonging to others, and cause no articles to be refunded except with written permission of CCO).

The State argues that the community custody condition regarding seeking or maintaining employment in a volunteer organization where Fryson may have access to "cash, checks, accounts receivable or payable, or books," was statutorily authorized by RCW 9.94A.703(2)(b). Br. of Resp't at 7. However, I do not find this argument persuasive because the trial court already imposed the community custody condition authorized under RCW 9.94A.703(2)(b) elsewhere in

the judgment and sentence; the community custody condition at issue here is different than that authorized under RCW 9.94A.703(2)(b).

RCW 9.94A.703(2)(b) allows a court to order an offender to "[w]ork at department-approved education, employment, or community restitution, or any combination thereof." The statute authorizes the imposition of the condition "'as part of any term of community custody'" and the condition "need not be crime-related." *State v. Kinzle*, 181 Wn. App. 774, 787, 326 P.3d 870 (quoting RCW 9.94A.703(2)), *review denied*, 181 Wn.2d 1019 (2014).

Here, the trial court did impose the condition authorized by RCW 9.94A.703(2)(b). But trial court also imposed the community custody condition that Fryson challenges, which is different from the community condition authorized by RCW 9.94A.703(2)(b). Fryson challenges the community custody condition that prohibits him from seeking or maintaining employment in a volunteer organization where he "has access to cash, checks, accounts receivable or payable, or books" without notifying the employer of his conviction or securing permission from his CCO. CP at 112. That challenged condition must be crime-related. Again, Fryson's crime was attempted first degree robbery arising from his attempt to rob someone at gunpoint, not any sort of check fraud, forgery, or embezzlement. There is no criminal relationship between Fryson's crime of attempted first degree robbery committed at gunpoint and the community custody condition barring him from seeking or maintaining employment in a volunteer organization where he has access to cash or financial documents. *Padilla*, 190 Wn.2d at 682-83. Thus, there is not substantial evidence that this challenged community custody condition is crime-related (i.e, directly related to the circumstances of attempted first degree robbery arising from attempting to rob someone at gunpoint).

CONCLUSION

For the reasons stated above, I respectfully dissent from the majority's holding that the community custody condition that prohibits Fryson from seeking or maintaining employment in a volunteer organization where he "has access to cash, checks, accounts receivable or payable, or books" without notifying the employer of his conviction or securing permission from his community custody officer is related to his crime of attempted first degree robbery and I would strike that condition. I concur in the remainder of the majority's opinion.



L___, J.