# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON , | ) | No. 75429-7-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| JAMES LARRY JOHNSON, III, | ) ) | |
| Appellant. | ) ) | FILED: December 26, 2017 |
| | ) | |

APPELWICK, J. — A jury convicted Johnson of two counts of rape of a child. Johnson argues that the trial court erred in admitting into evidence other alleged sexual assaults against children under ER 404(b). He also challenges his community custody conditions on various grounds, and alleges numerous errors in a SAG. We remand for the trial court to strike four community custody conditions and modify another. We affirm in all other respects.

## FACTS

In 2013, James Johnson began dating a woman. Johnson was the exclusive child care provider for the woman's eight year old son, M.D., while she was at work. It was normal for Johnson and M.D. to wrestle together at home. According to M.D., Johnson, while in his boxers, would wrestle M.D. to the ground, position himself behind M.D., and insert his penis into M.D.'s anus. These assaults would happen this same way each time.

M.D. told his mother that Johnson had "put something in his butt." Johnson was charged with two counts of rape of a child in the first degree for his acts against M.D.

The State sought to introduce at trial evidence of similar assaults against two other children as a common scheme or plan. First, Johnson had also been accused of raping his female cousin, M.G.[1] M.G. is seven and a half years younger than Johnson. Johnson would babysit her. M.G. was expected to follow Johnson's instructions while he was watching her.

M.G. alleged that, while she was between nine and 12 years old, Johnson repeatedly molested and raped her. On one occasion, M.G. and Johnson were home alone, sitting on a couch. Johnson bent M.G. over on the couch, pulled down her pants, and attempted to put his penis inside of her anus. Johnson's penis slightly penetrated her, but Johnson stopped once M.G. started crying. The trial court admitted this act as evidence of a common scheme or plan, but excluded other instances of alleged molestation of M.G. as not sufficiently similar to the facts alleged by M.D.

Second, Johnson was accused of raping another cousin, P.P.J.[2] P.P.J. is eight years younger than Johnson. Like M.G., Johnson would also look after P.P.J. P.P.J. alleged that he and Johnson would "fake wrestle" emulating wrestlers that

---

[1] The evidence regarding M.G. was reported to police after the charges were filed against Johnson. The investigation therefore took place after the investigation into M.D.'s allegations had begun.

[2] P.P.J.'s mother spoke to a detective about the accusations. But, the record does not indicate that Johnson was ever prosecuted for these accusations.

they saw on television. Some of Johnson's wrestling moves turned into touching P.P.J.'s genitalia and buttocks. The wrestling lasted ten minutes and the touching occurred the entire time.

In an 11 page written findings of fact and conclusions of law, the trial court explained that it would admit only some of the evidence:

> The Court is only finding that certain, specific acts of sexual misconduct against M.G. and P.P.J. are admissible to demonstrate the defendant's common scheme or plan. These acts include the following: (1) the defendant anally raping M.G, when he was babysitting her and no other adults were present, and (2) the defendant repeatedly fondling P.P.J.'s genitalia during an incident of play-wrestling. The other acts, referenced above, are not admissible because they do not contain sufficient similarities to be considered part of the same common scheme or plan. However, these two specific prior acts demonstrate substantial degrees of similarity such that they can be explained as individual manifestations of a common plan.
>
> . . . .
>
> The Court is very mindful about not admitting propensity evidence. This case is based on the testimony of a young child, M.D., who delayed reporting the alleged abuse. There is no physical evidence to corroborate M.D.'s testimony. The defendant allegedly raped M.D. in secrecy so no other adults could bear witness to the abuse or protect M.D. Evidence of prior bad acts is highly probative because it tends to prove material issues of the charged crime: whether the defendant had sexual contact with M.D. The Court has conducted an ER 403 balancing test and finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. The evidence is highly probative for all the reasons discussed above. Finally, to cure any potential prejudice, the Court will provide the jury with a limiting instruction, which will specifically tell the jury that they shall evaluate the prior sexual misconduct evidence only for the limited purpose of assessing common scheme or plan.

A jury found Johnson guilty of both counts of rape of a child in the second degree.

Johnson appeals.

3

DISCUSSION

Johnson argues that the trial court erred in admitting the common scheme or plan evidence. He challenges the community custody conditions on various grounds. He also makes numerous arguments in a statement of additional grounds (SAG).

## I. Common Scheme or Plan Evidence

Johnson first argues that the trial court abused its discretion in admitting the acts against M.G. and P.P.J. as part of a common scheme or plan under ER 404(b). When, as here, a trial court interprets an evidentiary rule correctly,[3] this court reviews the trial court's determination to admit or exclude evidence for an abuse of discretion. State v. Gresham, 173 Wn.2d 405, 419, 269 P.3d 207 (2012).

ER 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Proof of a "plan" is admissible if the prior acts are (1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial. State v. Lough, 125 Wn.2d 847, 852, 889 P.2d 487 (1995).

There are two instances when evidence is admissible to prove a common scheme or plan: (1) where several crimes constitute constituent parts of a plan in

---

[3] Johnson does not contend that the trial court misinterpreted ER 404(b).

4

which each crime is but a piece of the larger plan and (2) where an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes. Gresham, 173 Wn.2d at 421-22. This case involves the second category. Evidence of this second type of common scheme or plan is admissible because it is not an effort to prove the character of the defendant. Id. at 422. Instead, it is offered to show that the defendant has developed a plan and has again put that particular plan into action. Id.

To introduce evidence of this type of common scheme or plan, the prior misconduct and the charged crime must demonstrate common features such that they are naturally explained as a general plan of which the two are simply individual manifestations. Id. Mere similarity in results is insufficient. Id. While the prior act and charged crime must be markedly and substantially similar, the commonality need not be a unique method of committing the crime. Id.

A handful of cases illustrate the bounds of a trial court's discretion regarding common scheme or plan evidence. First, in Lough, our Supreme Court allowed common plan evidence where the defendant was alleged to have drugged and raped several women and he warned the women not to report the rape because no one would believe them. 125 Wn.2d at 864-65. The court noted that the common plan victims were all strangers to the victim, Lough surreptitiously drugged them, and raped them while unconscious. Id. at 865. The court stated, "Far from being inadmissible 'character' evidence, it is powerful, convincing, reliable and relevant evidence." Id.

5

Shortly after Lough, this Court found no abuse of discretion in State v. Krause, 82 Wn. App. 688, 697, 919 P.2d 123 (1996). There, Krause was convicted of child molestation and child rape. Id. at 690. He had repeatedly fondled and had sexual contact with two charged victims: J., a member of his girlfriend's family, and B., a boy who frequently visited their residence. Id. at 690-91. The trial court admitted common plan evidence of molestation of four previous victims. Id. at 692. Krause became acquainted with these victims in different ways. Id. One victim was a son of a friend's girlfriend. Id. at 691. A second victim was a son of one of Krause's friends. Id. at 692. A third victim was the young stepbrother of one of Krause's friends. Id. The fourth victim he befriended in the course of his employment as a hotel manager. Id. However, this court found it important that Krause gained the children's affection through games and outings, and eventually placed himself in a position where molestation would occur. Id. at 691-92, 695. We therefore held that a rational trier of fact could find that these similarities showed an overarching plan. Id. at 695.

Johnson argues that this case is more like State v. Slocum, 183 Wn. App. 438, 333 P.3d 541 (2014). Slocum was charged with child molestation and rape of a child for the alleged inappropriate sexual contact with his 15 year old stepgranddaughter. Id. at 443. The alleged molestation occurred while the granddaughter was between ages three and 14. Id. The abuse typically occurred when Slocum would be sitting in a recliner chair, and would ask the victim to sit on his lap. Id. at 444. He would then rub the victim's genitals. Id. On another

6

instance, Slocum locked the victim in a family trailer, pushed her onto a couch, and inserted his fingers into her vagina. Id.

The State moved to admit common plan evidence of Slocum sexually abusing the alleged victim's mother and aunt many years earlier. Id. at 443-44. The mother testified that when she was 12 years old, around 1981, Slocum had rubbed her vagina while she sat on Slocum's lap in a recliner chair. Id. at 445. In another instance, Slocum had fondled her breasts while she was lying on the floor. Id. The aunt testified that in 1996 or 1997, when she was about 12, Slocum briefly placed his hands on her breasts after she granted his request to apply sunscreen on her. Id. at 446. The trial court admitted the allegations of both the mother and the aunt. Id.

The Court of Appeals found no abuse of discretion in admitting the mother's abuse on the recliner, given that the granddaughter also alleged abuse on a recliner, and involved "grandfatherly behavior." Id. at 455. But, it found an abuse of discretion in admitting the evidence of fondling the mother on the floor, and fondling the aunt while applying sunscreen. Id. at 455-56. These instances appeared to be nothing more than opportunistic and therefore were not a common scheme or plan. Id.

A. M.G.

Here, the common plan evidence shares similarities with Johnson's molestation of the charged victim, M.D. M.G. was between ages 9 and 12 during the assault. M.D. was age 8 or 9 during the assault. The assaults of M.G. and

M.D. occurred while Johnson was babysitting alone. Like M.D., Johnson had gained the trust of M.G.'s and M.D.'s mothers to babysit the children when the mothers were gone. And, prior to the assaults of M.G. and M.D., Johnson used physical violence to dominate both children—he hit both M.G. and M.D. prior to the assault. The assaults of M.G. and M.D. occurred in a similar physical position. With both M.G. and M.D., Johnson pulled down their underwear and inserted his penis into their anus from behind. He took specific steps to make sure the victims did not see his penis. When the victims expressed their pain and distress, Johnson took steps to calm them. Given these similarities, the trial court acted within its discretion in deciding that the incidents involving M.D. and M.G. were part of a common scheme or plan.

### B. P.P.J.

While the acts against P.P.J. did not involve anal penetration, they too developed out of a similar pattern. P.P.J. is Johnson's cousin, and is eight years younger than Johnson. The assaults occurred when he was six years old, and at Johnson's home. He had frequently spent time with Johnson growing up. They would play video games together. Johnson had a position of trust over P.P.J., and P.P.J.'s mother trusted Johnson to watch over him. Johnson and P.P.J. would occasionally "fake wrestle" imitating moves of professional wrestlers. But, some of Johnson's wrestling "moves" involved touching P.P.J.'s genitals and buttocks. Johnson would say "whoops" and "sorry" when the touching occurred. But, it happened repeatedly over the course of about ten minutes.

8

The similarities with the assault of M.D. are numerous. Johnson developed trust with the both children's mothers so that he could look after the child. P.P.J. was six, while M.D. was eight or nine years old. Both assaults began with wrestling,[4] a physical but playful activity. Johnson then made sexual advances. The trial court also acted within its discretion in finding the assaults of P.P.J. and M.G. were part of a common scheme or plan.

Johnson argues that, despite these similarities, there is no evidence that Johnson deliberately isolated M.G. and P.P.J. to prey upon them. Rather, he contends that the evidence showed he took advantage of a mere opportunity and that does not amount to a common scheme. But, a rational trier of fact could easily conclude that development of the trust relationships with M.D.'s, M.G.'s, and P.P.J.'s mothers were each intended to create the opportunity to sexually assault the children.

Johnson also argues that the molestation of P.P.J. is critically different than M.D. because the assault on P.P.J. did not involve anal penetration. But, in State v. DeVincentis, 150 Wn.2d 11, 14-15, 16, 25, 74 P.3d 119 (2003), our Supreme Court affirmed the admission of common scheme or plan evidence involving oral sex, where the charged crime did not involve oral sex. Johnson's goal in both

---

[4] The common thread of wrestling is comparable to the common thread of the recliner chair in Slocum, 183 Wn. App. at 444. It is a key precipitating factual circumstance that evidences the similarities in the defendant's design. Similarly, in Lough, the assaults would start with Lough drugging the victims. 125 Wn.2d at 865. Here, the assaults against M.D. and P.P.J. began as playful wrestling with unassuming children.

circumstances was sexual stimulation involving a child of similar age, over whom Johnson had a position of authority.

The lengthy findings and conclusions illustrate the trial court understood and properly applied the rule to exclude other acts the state sought to admit. The carefully reasoned decision properly admitted the challenged evidence under ER 404(b). The trial court did not abuse its discretion.[5]

## II. Community Custody Conditions

Johnson challenges various community custody conditions. He challenges conditions regarding curfew, alcohol, sexual materials, sex related businesses, contact with children, and dating relationships.

Trial courts may impose crime-related prohibitions while a defendant is in community custody. RCW 9.94A.505(9), .703(3)(f). A "crime-related prohibition" prohibits conduct that directly relates to the circumstances of the crime for which the offender has been convicted. RCW 9.94A.030(10). "Directly related" includes conditions that are reasonably related to the crime. State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015). " '[B]ecause the imposition of crime-related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-

---

[5] Johnson's ER 404(b) challenge is primarily that the acts are insufficiently similar. But, his brief also includes a single sentence that argues that the evidence's probative value was substantially outweighed by the danger of unfair prejudice. But, the probative value of the evidence was very high, because the facts aligned closely with the alleged crime. And, while the evidence surely created prejudice, numerous cases have found that the prejudicial effect of prior similar molestations that are offered as common plan evidence does not substantially outweigh the probative value. See, e.g., DeVincentis, 150 Wn.2d at 23-24. And, the trial court explicitly noted its balancing of the probative value and prejudicial effect, and for that reason gave a limiting instruction that the jury was to use the evidence only for assessing the common scheme or plan.

person appraisal of the trial and the offender,' the appropriate standard of review is abuse of discretion." State v. Norris, 1 Wn. App. 2d 87, 97, ____ P.3d ___ (2017) (quoting In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010)). A sentencing court abuses its discretion if its decision is manifestly unreasonable or if exercised on untenable grounds or for untenable reasons. Irwin, 191 Wn. App. at 656.

### A. Curfew and Alcohol

Johnson challenges community custody conditions 7 and 12, which impose a curfew and prohibit alcohol use, respectively. The State concedes that these conditions should be stricken, because they are unrelated to the crime. We accept the State's concession and remand with instructions to strike the conditions that impose a curfew and prohibit alcohol use.

### B. Sexually Explicit Materials and Sex Related Businesses

Johnson next challenges the community custody conditions that prohibit possession of sexually explicit materials and prohibit him from patronizing sex related businesses. He argues that (1) they are not crime related, and (2) even if they are crime related, they violate his First Amendment rights to free speech.

#### 1. Sexually Explicit Materials

Condition 11 states,

> Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider.

11

Johnson notes that this court accepted the State's concession on a similar argument in State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014). There Kinzle was convicted of two counts of first degree child molestation. Id. at 777. This court accepted the State's concession on whether a prohibition on sexually explicit materials condition was reasonably related to the crime. Id. at 785.

However, a recent opinion resulted in a different outcome. See Norris, 1 Wn. App. 2d at 90. The Norris court found a prohibition on sexually explicit materials to be sufficiently related to second degree child molestation. Id. It emphasized that the relationship of a community custody condition to the crime must be based on the facts of the crime, rather than the class of the crime. See id. at 96-97. For example, the Norris court upheld a prohibition on sexual materials, because the crime involved exchanging sexually explicit text messages and images with the child victim. Id. at 99. Here, besides the fact that the crime is sexual in nature, there are no facts that pertain specifically to sexually explicit materials or images. This is insufficient to connect the crime to the condition. We remand with instructions that the trial court strike condition 11. Because we find that condition 11 is insufficiently related to the crime, we need not address whether the sexually explicit materials restriction violates Johnson's First Amendment rights.

2. Sex Related Businesses

Condition 10 states, "Do not enter sex-related businesses, including: x-rated movies, adult bookstores, strip clubs, and any location where the primary

12

source of business is related to sexually explicit material." In Norris a prohibition on entering sex related business was insufficiently related to a sexual crime against children, when the record does not show that frequenting sex related business was in any way related to the crime. Norris, 1 Wn. App. 2d at 98. Here, as in Norris, the only relationship between the crime and sex related business is that they are both sexual in nature. Id.

We remand with instructions to strike condition 10, and therefore decline to address Johnson's First Amendment arguments with respect to sex related businesses.

### C. Contact with Children

Johnson next argues that condition 16, which prohibits contact with minors, infringes on his constitutional right to parent his child. Johnson requests only that he have the opportunity for supervised contact with his child. The State concedes that the condition should be modified to prohibit only contact with minors without the supervision of a responsible adult with knowledge of this conviction. We accept this concession and remand with instructions to modify the condition to allow Johnson to have contact with his child under the supervision of a responsible adult that has knowledge of this conviction.

### D. Dating Relationship

Johnson next contends that the community custody condition that requires him to disclose a dating relationship is unconstitutionally vague. But, in Norris, we rejected an identical argument and held that the term is sufficiently specific. Id. at

95. The "dating relationship" community custody provision is not unconstitutionally vague.

III. Statement of Additional Grounds for Review

Johnson makes numerous arguments in his SAG.

A. Right to Present a Complete Defense

In additional grounds one and six, Johnson first argues that he was denied a right to present a complete defense. He claims that he wanted to present evidence that M.D. rescinded his accusation, but he was prevented from doing so. It is Johnson's burden on appeal to present facts sufficient to support his assignment of error. State v. Holbrook, 66 Wn.2d 278, 280, 401 P.2d 971 (1965). He has not.

B. Ineffective Assistance of Counsel

Johnson argues that his trial counsel was ineffective for failing to impeach or cross-examine M.D. and other state witnesses, and by issuing an inadequate subpoena during investigation of the case.

As to the impeachment and cross-examination issue, this court employs a strong presumption that counsel was effective. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Johnson claims that counsel should have confronted M.D. about rescinding his accusation. But, the trial court record shows a lengthy cross-examination of M.D., a child witness. Therefore, counsel's choice not to use Johnson's preferred strategy for impeachment is insufficient to overcome the strong presumption of effective representation. See In Re Det. of

14

Hatfield, 191 Wn. App. 378, 398, 362 P.3d 997 (2015) ("The array of trial tactics and strategy available to the attorney as a means of achieving the client's goals is considerable, including decisions as to who to call and how to question a witness.").

Johnson also claims that counsel was ineffective in impeaching and cross-examining other witnesses. But, he fails to identify who those witnesses are, and why counsel should have employed a different strategy. He does note that the trial court once asked counsel not to repeat direct examination. But, this is also insufficient to overcome the presumption of effective representation.

As to the subpoena, Johnson claims that counsel's subpoena of school records contained language that inadequately described the records sought. But, the defendant bears the burden of showing ineffective assistance based on the record. Id. at 337. The subpoena he describes is not in the record, nor does he point to any portion of the record that discusses the circumstances of that subpoena. This argument therefore fails.

C. Jury Instructions

Johnson also claims that the jury was improperly instructed on the definition of sexual intercourse. But, this argument was not raised below, and it is therefore waived under RAP 2.5(a) (stating that appellate courts need not address issues raised for the first time on appeal).

## D. Expert Testimony

Johnson argues that the opinions of the State's expert on child abuse and psychology are not based on a recognized scientific principle, and are not generally accepted in the field. But, nothing in the record shows that Johnson objected to the expert's testimony on this ground. Therefore, this argument is also waived under RAP 2.5(a) (stating that appellate courts need not address issues raised for the first time on appeal).

## E. Sufficiency of Evidence

Johnson next claims that the evidence was insufficient to show (1) that he committed two distinct acts that would support the two counts he was charged with, and (2) that he penetrated the victim's anus. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Johnson was charged with two counts of rape of a child in the first degree. The only grounds he gives for this sufficiency challenge is that the evidence did not delineate between specific incidents of rape. But, when asked how many times Johnson had penetrated him, the victim, M.D., testified that it happened more than once, and occurred on both weekends and weekdays. Viewed in the light most favorable to the State, this testimony alone establishes that multiple rapes occurred.

Johnson also argues that, because M.D. testified only that Johnson penetrated his "butt," the evidence was insufficient to show that Johnson penetrated M.D.'s anus. When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. Id. M.D. testified that Johnson would come out of his room in his boxers, get on top of M.D., use his "boy body part," and M.D. would feel pain in his "butt." It is a reasonable inference to determine that M.D. was referring to penetration of his anus.

The evidence was sufficient to prove two counts of rape of a child in the first degree.

### F. Pretrial Rulings

Johnson's next SAG argument claims that the "trial court abused its discretion in basing pre-trial rulings on erroneous views of the law." He then cites to a case regarding the proper remedy when charging information is insufficient. He makes no further argument on this issue, and it fails to identify any ground for reversal.

### G. Racial Bias

Finally, Johnson argues that the trial court was required to inquire into possible racial bias of jurors. But, our Supreme Court has clearly stated that a trial court has "no obligation to raise the question of racial prejudice when it was not requested by the defendant or his counsel." State v. Davis, 141 Wn.2d 798, 834,

10 P.3d 977 (2000). Johnson does not point to any part of the record where he or his attorney made any such request. This argument fails.

We remand for the trial court to strike condition 7 (curfew), condition 10 (sex related businesses), condition 11 (sexually explicit materials), and condition 12 (alcohol), and modify condition 16 (contact with minors). We affirm in all other respects.

WE CONCUR: